JAMES A. CLEGG & another[1] *vs.* JEFF L. BUTLER & others.[2]

Middlesex. January 6, 1997. - March 12, 1997.

Present: WILKINS, C.J., O'CONNOR, GREANEY, FRIED, & MARSHALL, JJ.

*Insurance,* Motor vehicle insurance, Settlement of claim, Unfair act or practice. *Consumer Protection Act,* Insurance, Damages, Offer of settlement, Unfair or deceptive act.

A third-party claimant to an insurance policy has standing to seek recovery under G. L. c. 93A against the insurer for its failure to effectuate a prompt, fair, and equitable settlement pursuant to G. L. c. 176D, § 3(9)(*f*), of claims in which liability has become reasonably clear. [417-419]

In an action brought under G. L. c. 93A for an insurer's unfair settlement practices, the judge's findings that the insurer's response to the claimant's demand letter was inadequate and was unfair and deceptive, and that the insurer's tardy offer of settlement violated the statute were supported by the evidence and were not clearly erroneous, and the judge was not foreclosed from considering other unfair and deceptive activities of the insurer that were not the subject of the complaint in reaching his conclusion that the insurer had acted improperly and violated its duty under G. L. c. 176D, § 3(9). [420-423]

In an action brought under G. L. c. 93 against an insurer for unfair settlement practices, in which the parties settled and thus no judgment entered, the damages to be multiplied were to be calculated based on the lost interest on the money unlawfully withheld, and the matter was remanded for the redetermination of damages. [423-425] O'CONNOR, J., dissenting, was of opinion that, in the circumstances, judgment should be entered in favor of the insurer.

CIVIL ACTION commenced in the Superior Court Department on February 1, 1993.

The case was heard by *Hiller B. Zobel,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*John G. Ryan (Stimpson B. Hubbard* with him) for Utica Mutual Insurance Company.

---

[1]Katherine M. Clegg.

[2]Louis C. Butler, Helene M. Butler, and Utica Mutual Insurance Company.

*David W. White-Lief* (*Marc L. Breakstone* with him) for the plaintiffs.

*Thomas R. Murphy & James T. Scamby,* for Louis C. Butler & another, were present but did not argue.

The following submitted briefs for amici curiae:

*Edward T. Hinchey & Miles W. McDonough* for Amica Mutual Insurance Company & another.

*Frederic N. Halstrom & John J. St. Andre, Jr.,* for Massachusetts Academy of Trial Attorneys.

*Erik Lund & Jeffrey S. Brody* for New England Insurance Company.

FRIED, J. These cross appeals in this case arise from a claim brought by the plaintiffs against the defendant insurer, Utica Mutual Insurance Company (Utica), alleging unfair settlement practices in violation of G. L. c. 176D, § 3 (9) (*f*), and seeking damages under G. L. c. 93A, § 9 (3).[3] Finding Utica liable on this count, the judge awarded the plaintiff James A. Clegg treble damages based on a settlement reached with the insured prior to the trial. The insurer appeals from this damage award. As to the settlement, the parties reached a stalemate as to how the claims were to be closed out. The plaintiffs filed a motion for entry of judgment against the Butlers. This motion was denied as moot, and the plaintiffs appealed. We granted Utica's application for direct appellate review. We affirm the judgment in part, we reverse in part, and we remand the case for further proceedings.

I

On May 4, 1991, James Clegg was seriously injured in a two-car automobile accident after the vehicle driven by Jeff Butler struck Clegg's automobile in a head-on collision. Butler's vehicle was insured by Utica under a policy issued to his parents which insured bodily injuries up to a limit of $250,000 per person. The Butlers also had coverage pursuant to an excess liability policy issued by Merrimack Mutual Insurance Co. (Merrimack) which had a policy limit of $1,000,000.

---

[3]General Laws c. 93A, § 9 (1), specifically provides that "any person whose rights are affected by another person violating the provisions of [G. L. c. 176D, § 3 (9)] may bring an action." See *Polaroid Corp.* v. *Travelers Indem. Co.,* 414 Mass. 747, 754 (1993); *Transamerica Ins. Group* v. *Turner Constr. Co.,* 33 Mass. App. Ct. 446, 452 (1992).

Shortly after the accident, Utica became aware that the Cleggs were represented by counsel. Utica promptly began an investigation of the accident and, according to the judge's detailed findings, quickly determined that its insured was clearly at fault in the accident. In June, 1991, Utica scheduled an independent medical examination of Clegg to investigate the extent of his injuries but because the orthopedic specialist performing the examination lacked medical information concerning Clegg's care and treatment history, Utica did not consider the evaluation accurate or helpful. Utica never sought an additional independent medical examination of Clegg.

In June and November of 1991, and December, 1992, Utica hired investigators to conduct surveillance and "activity checks" on Clegg. Contrary to its own policies which prohibited interviewing claimants represented by counsel, Utica did not inform any of the investigators that the Cleggs had hired an attorney and thus both Clegg and his wife were approached and interviewed as part of these investigations. After the first investigation in July, 1991, an investigator told Utica that this was a serious case that appeared to be a "long term, total disability case" and recommended that Utica make sure its reserves were sufficient to cover the claim.

The Cleggs presented their first settlement demand to Utica on September 20, 1991, in which they asked for $200,000. As part of the settlement demand and pursuant to requests by the insurer, the Cleggs provided Utica with numerous medical records. Utica did not respond to this demand for settlement. On January 23, 1992, the Cleggs sent a demand letter to Utica, claiming that Utica was violating its obligation to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" under G. L. c. 176D, § 3 (9) (f). The letter demanded relief under G. L. c. 93A and made a new settlement demand in the amount of $750,000. Utica's response was dated February 20, 1992. It included no settlement offer, denied any violations of G. L. c. 176D or G. L. c. 93A, and requested additional medical records which were said to be part of a "long outstanding request" for information regarding a former back injury. The Cleggs's attorney responded by letter four days later, in which he provided new copies of the requested records and notified Utica that these records had already been provided to Utica

the previous October. Utica did not request any additional medical information on this matter following this response.

In March, 1992, Utica retained a neurologist to review Clegg's medical records, and he concluded that Clegg's injuries were causally related to the accident with Butler. In mid-April, Utica requested additional medical information which was provided over the course of the next month along with new medical data as they became available. In June, 1992, Utica's claims managers recommended raising the policy reserve to the policy limit of $250,000 and recommended authorization to settle the case at this limit. Although the judge found that Utica's home office accepted these recommendations within days, Utica did not present the Cleggs with a settlement offer until the beginning of July, at which time the Cleggs were presented with a series of structured settlements, each having a present value of less than $175,000. The Cleggs rejected these offers and commenced action against the Butlers and Utica in February, 1993, after having raised their settlement demand to the combined policy limits of $1.25 million in October, 1992. Utica retained an attorney to represent the Butlers. In the course of his investigation this attorney determined that the probable value of the case exceeded Utica's policy limit and in September and November of 1993, he recommended that Utica offer the Cleggs $250,000 in settlement, characterizing potential damages as "astronomical." Despite these recommendations, a second settlement offer was not forthcoming until a mediation session was conducted in May, 1994, just prior to the commencement of the scheduled trial. At that time, Utica finally offered the full $250,000, after which the excess insurer agreed to pay $425,000, and the parties agreed to settle for a combined amount of $675,000.

The Cleggs's allegations of unfair settlement practices on the part of Utica were not relinquished by this settlement. Following a jury-waived trial on this matter, the judge ruled that Utica had violated G. L. c. 176D, § 3 (9) (*f*), by failing to effectuate a prompt, fair, and equitable settlement of a claim in which liability was reasonably clear. According to his findings, "Utica knew or should have known that [Clegg] was permanently and totally disabled" by June, 1992. The judge ruled Utica's failure to extend a settlement offer in response to the Cleggs's demand letter violated G. L. c. 93A,

§ 9, and that this violation continued as Utica failed to offer its policy limits to the Cleggs despite his finding that "Utica possessed sufficiently adequate documentation to warrant" such an offering. He found that Utica did not need nor reasonably attempt to obtain further medical information, and instead "provoked unnecessary litigation in the faint hope of discovering damaging information" although it could not have had a reasonable belief that such information existed. Pursuant to these conclusions, the judge entered judgment for Clegg in the amount of $250,000 which he then trebled under the provisions of c. 93A, § 9, for wilful and knowing violations. Attorney's fees in the amount of $150,000 were also awarded.

In the meantime, a disagreement had arisen in the settlement process as to how the claims against the Butlers were to be extinguished. After the Butlers' attorney refused to sign a settlement release denoted "Agreement for Judgment," the Cleggs's attorney drafted another release which provided, among other things, "that an appropriate judgment upon the underlying bodily injury claims in the total amount of [$675,000]" would be filed in the trial court. The Cleggs signed this release and forwarded it to the Butlers' attorney who then forwarded the check for $425,000 from the excess insurer. Utica's counsel notified the Butlers' counsel that they objected to the judgment language contained in the release. The Butlers' attorney repeated this objection when he sent Utica's check for $250,000 to the Cleggs. Although the settlement had been paid in full, there remained a dispute as to whether the parties had agreed that an agreement for judgment would be executed and filed. Because the Cleggs refused to enter into a stipulation of dismissal, they moved for an entry of judgment. When this motion was denied, the Cleggs moved for reconsideration; the motion for judgment was again denied. Following the conclusion of the trial on the c. 93A claims, on a motion by Utica, the judge allowed a motion dismissing the Cleggs's complaint against the Butlers.

## II

### A

Contesting its liability to the Cleggs, Utica argues that the Cleggs, as third-party claimants to the Butlers' insurance policy, cannot recover against the insurer for its failure to ef-

fectuate a settlement under G. L. c. 176D, § 3 (9) (f). This statute provides that it is an unfair claim settlement practice for an insurer to fail "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." The crux of Utica's argument is that liability cannot be considered "reasonably clear" if either fault or damages are still contested. While we agree that liability is not "reasonably clear" if it is still the subject of good faith disagreement, we reject Utica's conclusion that, when the plaintiff is a third party rather than the insurer's insured, the insurer owes no duty to the third-party claimant under this statute "until both liability and damages have been determined in an appropriate, legal forum or agreed upon."[4]

Under Utica's interpretation, a third-party claimant has no right to a settlement offer by the insurer under this statute prior to a trial or entry of judgment. This proposition is without merit. Utica itself acknowledges that our case law permits third-party claimants such as the Cleggs to bring actions against liability insurers who violate G. L. c. 93A. In *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675 (1983), we observed that G. L. c. 93A, § 9 (1), provides that "*any person* whose rights are affected by another" party's violation of G. L. c. 176D, § 3 (9), is entitled to bring an action under c. 93A (emphasis supplied). This broad language entitles any plaintiff to recover under c. 93A, § 9, if his rights are adversely affected or if he suffers "injury" because of another party's breach of his statutory duty. *Id.* In this context, "injury" simply refers to "the invasion of any legally protected interest of another." *Leardi* v. *Brown*, 394 Mass. 151, 159 (1985), quoting Restatement (Second) of Torts § 7 (1965). The text of G. L. c. 93A, § 9 (1), and our interpretation in *Van Dyke* are both clear affirmations of third-party rights, and we cannot accept Utica's argument that only insureds are owed a duty of fair dealing when it comes to an insurer's settlement practices. See S. Young, Chapter 93A and the Insurance Industry § 14.04, Chapter 93A Rights and Remedies (Mass. Continuing Legal Educ. 1996 & Supp. 1996). See also *Flattery* v. *Gregory*, 397 Mass. 143, 150 (1986)

---

[4]Utica concedes that an insurer might incur an obligation to the third-party claimant if the insured and the third party conclude a settlement between themselves and thereafter the insurer unreasonably refuses to pay its share under that settlement.

(holding that third-party claimants are intended beneficiaries under optional automobile liability insurance policies).

The duty of fair dealing in insurance settlement negotiations is established by statute under G. L. c. 176D, § 3 (9), and the specific duty contained in subsection (f) is not limited to those situations where the plaintiff enjoys contractual privity with the insurer.[5] The statutes at issue were enacted to encourage the settlement of insurance claims, see *Thaler* v. *American Ins. Co.*, 34 Mass. App. Ct. 639, 643 (1993), and discourage insurers from forcing claimants into unnecessary litigation to obtain relief. This goal of facilitating settlement is equally desirable whether the plaintiff is an insured or a third-party claimant, and c. 93A, § 9 (1), confers standing where there is injury resulting from another's unlawful acts. Standing does not depend on a party's status as an insured or a third-party claimant.

It is Utica's further contention that, because the Cleggs and the Butlers eventually entered into a settlement, which the Cleggs denote as "fair and equitable," that the Cleggs were not adversely affected or injured by Utica's actions. Whether a settlement is eventually reached or not, unjust delay subjects the claimant to many of the costs and frustrations that are encountered when litigation must be instituted and no settlement is reached. Moreover, when an insurer wrongfully withholds funds from a claimant, it is depriving that claimant of the use of those funds. "This is precisely the type of damage we have described as appropriately being subject to multiplication in an action . . . under c. 93A." *Schwartz* v. *Rose*, 418 Mass. 41, 48 (1994).[6]

---

[5]Perhaps attempting to buttress its argument that third-party claimants are not protected under c. 176D, § 3 (9), Utica notes that subsection (g) creates no rights in persons other than the insured, see *Jacobs* v. *Town Clerk of Arlington*, 402 Mass. 824, 829 (1988), and observes that other clauses can be read the same way. We note, however, that subsection (g), by its text, is explicitly restricted to insureds. There is no such limiting language contained in subsection (f), a clause which we read to apply to any party whose legal interests might be adversely affected by an insurer's failure to effectuate settlement where liability is reasonably clear. See M.C. Gilleran, The Law of Chapter 93A § 9:28 (1989 & Supp. 1996).

[6]We note that the settlement here explicitly reserved the Cleggs's right to proceed against Utica for c. 93A damages and thus these claims were not extinguished by the settlement.

## B

*Violation of duty to settle.* Utica claims that, even if the Cleggs have a cause of action under G. L. c. 93A, Utica did not breach its obligations under the statute. Utica contends that the judge made erroneous findings of fact, without which no violation of G. L. c. 93A could be found. We will not disturb a judge's findings of fact in a c. 93A claim unless those findings are clearly erroneous, *Bressel* v. *Jolicoeur*, 34 Mass. App. Ct. 205, 211 (1993), citing *Service Publications, Inc.* v. *Goverman*, 396 Mass. 567, 578 n.13 (1986), and here they are not.

Utica's first factual disputes challenge the judge's finding that Utica's response to the Cleggs's demand letter of January 23, 1992, "was inadequate, constituted statutory unfairness and deception," and that "Utica's failure to make an offer of settlement until July 3, 1992, violated the statute." Our standard for examining the adequacy of an insurer's response to a demand for relief under G. L. c. 93A, § 9 (3), is "whether, in the circumstances, and in light of the complainant's demands, the offer is reasonable." *Calimlim* v. *Foreign Car Ctr., Inc.*, 392 Mass. 228, 234 (1984), citing *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795 (1976). In this case, there was no offer contained in Utica's response. In their demand letter, the Cleggs described the unfair or deceptive acts they were alleging and the injury suffered, as required by G. L. c. 93A, § 9 (3), and requested settlement in the amount of $750,000 — an amount the judge found to be "objectively reasonable." Utica summarily denied any basis for liability under c. 93A and requested medical records the judge determined it had already received.[7]

On appeal, Utica takes the position that the judge was wrong to find the Cleggs's demand for $750,000 reasonable because, while this figure may have become reasonable with the passage of time and the collection of further information, it was not reasonable at the time the demand letter was received and thus Utica's response, or lack thereof, was justi-

---

[7] We note that in order to encourage settlements, a demand letter under c. 93A, § 9 (3), serves two purposes. Besides providing an insurer notice regarding a claim, it also provides the insurer with a means to limit liability by making a reasonable offer of settlement within thirty days following receipt of the demand letter. See M.C. Gilleran, The Law of Chapter 93A § 7:6, at 201 (1989).

fied. We agree with Utica that a duty to settle does not arise until "liability has become reasonably clear," G. L. c. 176D, § 3 (9) (*f*), and that liability encompasses both fault and damages. See, e.g., *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, *supra* at 677 (no damages awarded because liability was not reasonably clear); *Demeo* v. *State Farm Mut. Auto. Ins. Co.*, 38 Mass. App. Ct. 955, 957 (1995) (defendant's fault liability was not reasonably clear). Insurers must be given the time to investigate claims thoroughly to determine their liability. Our decisions interpreting the obligations contained within G. L. c. 176D, § 3 (9), in no way penalize insurers who delay in good faith when liability is not clear and requires further investigation.

In this case the evidence supported the judge's finding that fault was never at issue and "[a]t no time did Utica consider the case to be anything but a so-called 100% liability case against its insured." As to damages, Utica persistently argues these were a matter of valid dispute, pointing out that even the Cleggs's brief states that the dollar amount of damages were "undetermined until the agreed upon settlement." While the eventual combined settlement figure paid by both Utica and Merrimack may have been the subject of uncertainty, the judge found that by the time the demand letter was received, Utica "possessed sufficient[] documentation" to put it on notice that an offer of $250,000 would be reasonable. Further investigation only confirmed those reports and the evidence suggests that after June, 1992, when the judge found "Utica knew or should have known that [Clegg] was permanently and totally disabled from work," there was no reasonable doubt that damages exceeded the $250,000 available under the Utica policy.[8] Even if the $750,000 demand of January,

[8]We recognize Utica's point, on which the dissent also focuses, that it would not have paid its proceeds to the Cleggs "until the entire case was settled with whatever contribution Merrimack would make" as the excess insurer, because Utica's duty to its insureds would not have terminated until the complete settlement was concluded. This fact, however, cannot shield Utica from liability when it was reasonably clear that damages would exceed $250,000.

Until Utica was prepared to address the possibility that the Cleggs were entitled to its policy limits, Merrimack, as the excess insurer, had no reason to know that it would be required to provide compensation from its policy to the Cleggs, and thus no reason to examine or determine the extent of its

1992, was unwarranted at that time, by June, 1992, Utica possessed all but one of the medical reports and examinations it considered vital to the reasonableness of the Cleggs's $750,000 settlement demand. As Utica had amassed enough information to know it was highly probable that it would be liable to the full extent of its policy, the judge was warranted in finding that the structured settlement offers finally offered in July were "unreasonably low," "unrealistic," and "unjustified." See *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 102 (1983), citing *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 799 (1976) (determination of reasonableness is a question of fact).[9] Far from promoting settlement, Utica's response to the Cleggs's demand letter followed by a continuing unwillingness to extend a reasonable offer of settlement foreseeably

---

liability. If we were to follow the position taken by the dissent, when a primary insurer and an excess insurer both cover a claim, a primary insurer who subjects a party to improper delay would never be liable for the injuries caused by such behavior, because there would always be some uncertainty as to what the excess insurer would have done if the primary insurer had behaved differently. We do not believe such a result comports with the language or intent of G. L. c. 176D, § 3 (9), or G. L. c. 93A. The evidence regarding the excess insurer's readiness to pay, both as to timing and amount, must necessarily be indirect and inferential in a case such as this, since the excess insurer has no obligation or incentive to make an explicit commitment until the primary insurer has acted. If, as the dissent suggests, such evidence is insufficient, the injured party would never be able to recover damages in respect to the delay in receiving payment from either the excess insurer or the primary insurer. Primary insurers cannot avoid liability for their unfair settlement practices under G. L. c. 176D, § 3 (9), by pointing to the uncertainty surrounding a claim against an excess insurer, when that uncertainty stems from the primary insurer's own behavior and delay. Additionally, we note that Merrimack's prompt decision to settle, once Utica paid its limits, reinforces our determination that the extent of Utica's liability was not a matter of serious doubt. The promptness of Merrimack's settlement also supports the judge's inference that had Utica offered its policy limits earlier, Merrimack would have settled earlier too.

[9]Utica also takes issue with the judge's finding that its G. L. c. 93A response was inadequate because it failed to discuss any possibility of settlement, instead requesting medical information which had been previously supplied. Utica insists this finding is clearly erroneous because its request for these medical records "accurately described the status of the matter shown in [Utica's] records at the time it was made." Whatever the state of Utica's records, the judge's determination that this request was redundant is supported by the record and the judge's ruling as to the inadequacy of Utica's response to the Cleggs's demand letter was not clearly erroneous.

forced the claimants to litigate. See *Calimlim* v. *Foreign Car Ctr., Inc., supra* at 234.[10]

Last, Utica takes issue with the judge's findings that certain activities not referred to in the Cleggs's demand letter were independent violations of G. L. c. 93A.[11] Specifically, Utica asks that we set aside the judge's findings that Utica violated c. 93A, § 9, and acted "unfairly and deceptively" when it allowed its investigators to approach the Cleggs after it knew the Cleggs were represented by counsel and when Utica improperly invaded Clegg's privacy by attempting to contact nurses who had treated him. Chapter 93A requires claimants to set out specifically any activities in their demand letter as to which they seek relief. Separate relief on actions not so mentioned is foreclosed as a matter of law. *Bressel* v. *Jolicoeur*, 34 Mass. App. Ct. 205, 211 (1993), citing *Entrialgo* v. *Twin City Dodge*, 368 Mass. 812, 813 (1975). See *Spring* v. *Geriatric Auth. of Holyoke*, 394 Mass. 274, 287 (1985). This preclusion does not mean, however, that the judge was foreclosed from taking such activities into account in reaching his conclusion that the insurer had acted improperly and violated its duty under c. 176D, § 3 (9).[12]

### C

*Measure of damages under G. L. c. 93A.* Finding a violation of G. L. c. 93A, § 9 (3), the judge awarded the Cleggs damages in the amount of $250,000, the amount of Utica's policy limit which was paid as part of the settlement. This amount was then trebled under the provisions of G. L. c. 93A, § 9 (3), the relevant text of which provides:

[10]In a similar vein, Utica challenges the judge's finding that Utica's home office accepted the recommendation that its New England office authorized a $250,000 settlement in June, 1992. The judge's finding is supported by the record. See *Schwartz* v. *Rose*, 418 Mass. 41, 46 (1994).

[11]Utica also challenges the judge's determination that "had Utica offered its policy limits in late 1992, Merrimack would have made an offer at least equivalent to that which it made in May, 1994 ($425,000), and which [Clegg] accepted." The record supports the judge's inference that Merrimack would have settled once Utica tendered its limits. See note 8, *supra*. As to any uncertainty regarding the amount of an earlier Merrimack settlement, this will need to be resolved when the case is remanded for a recalculation of damages, see *infra*.

[12]Furthermore, we note that, while two of the investigations had already occurred, the third investigation and the improper attempt to contact Clegg's nurses had not occurred at the time of the demand letter.

"if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation . . . or that the refusal to grant relief upon demand was made in bad faith . . . . *For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence . . . ."*

(emphasis supplied). The italicized portion of this statute was inserted by St. 1989, c. 580, § 1, which was apparently enacted in response to cases such as *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366 (1988); *Trempe* v. *Aetna Cas. & Sur. Co.*, 20 Mass. App. Ct. 448 (1985); and *Wallace* v. *American Mfrs. Mut. Ins. Co.*, 22 Mass. App. Ct. 938 (1986), which limited those damages subject to multiplication under c. 93A to loss of use damages, measured by the interest lost on the amount the insurer wrongfully failed to provide the claimant. See *Cohen* v. *Liberty Mut. Ins. Co.*, 41 Mass. App. Ct. 748, 753-754 (1996); *Greelish* v. *Drew*, 35 Mass. App. Ct. 541, 542 n.3 (1993). This amendment greatly increased the potential liability of an insurer who wilfully, knowingly or in bad faith engages in unfair business practices.

Unlike the case of *Cohen* v. *Liberty Mut. Ins. Co.*, *supra* at 755-756, Utica paid the Cleggs the amount due under its policy prior to the c. 93A litigation. When a case has been settled outside the courtroom, there is no "judgment" on which to base the multiple damage calculus. *Bonofiglio* v. *Commercial Union Ins. Co.*, 411 Mass. 31 (1991), *S.C.*, 412 Mass. 612 (1992). In *Bonofiglio*, a claimant sought insurance proceeds from his insurer following an automobile accident in which the claimant sustained serious personal injuries. After the claimant presented the insurer with a demand letter under c. 93A, the insurer extended an inadequate settlement offer which the claimant refused and the case proceeded to arbitration. In arbitration, the claimant was awarded $283,000. In his subsequent successful lawsuit alleging unfair settlement practices in violation of G. L. c. 176D, § 3 (9), the claimant asked the judge to double the amount of the arbitrator's

award, and not merely the interest lost due to unfair delay on the part of the insurer. *Id.* at 32-33. Discussing the amount to be doubled, we held that the arbitrator's award was not a "judgment" within the meaning of the amended statute. Noting the canon of construction contained in G. L. c. 4, § 6, Third, we determined that "[t]he term 'judgment' has acquired a peculiar meaning in law; it is founded on a decision by a court, not on an award by an arbitrator." *Id.* at 37, citing Mass. R. Civ. P. 54 (a), 365 Mass. 820 (1974). Just as an arbitrator's award is not a judgment, neither is a settlement. The multiple damages provided under c. 93A are punitive damages intended to penalize insurers who unreasonably and unfairly force claimants into litigation by wrongfully withholding insurance proceeds. As part of a statutory scheme meant to encourage out-of-court resolutions, the statute does not punish settling insurers by placing the entire settlement award at risk of multiplication. Where there has been no judgment, our previous rule remains in effect: base damages are calculated according to the interest lost on the money wrongfully withheld by the insurer, compensating claimants for "the costs and expenses directly resulting from the insurer's conduct." S. Young, Chapter 93A and the Insurance Industry § 14.19, Chapter 93A Rights and Remedies (Mass. Continuing Legal Educ. 1996 & Supp. 1996). See *Bertassi* v. *Allstate Ins. Co., supra* at 372-373; *Greelish* v. *Drew, supra* at 545.

Because the statutory language the judge used to determine liability and to award damages does not apply to settlements, there will have to be a determination under the standard set out here of what damages the defendant caused the Cleggs. The judge will need to determine the date at which Utica should have offered its policy limits and the date at which Merrimack would have been willing to settle in order to determine the period of time during which the Cleggs were wrongfully denied the use of funds from the insurers. See note 11, *supra,* as to amount.

### III

The plaintiffs raise several claims regarding the circumstances and the intentions of their settlement agreement with the Butlers, including reliance and estoppel, contract theories, and judicial error, to support their contention that a judg-

ment should have been entered against the Butlers in the amount of $675,000. The fervor with which the Cleggs worked to incorporate this entry of judgment against the Butlers can only be explained by an awareness that G. L. c. 93A, § 9 (3), provides that "judgment on all claims arising out of the same and underlying transaction or occurrence" are subject to multiple damage calculations. Nonetheless, as stated above, "judgment" is a term of art and does not encompass damages awarded as part of a settlement. *Bonofiglio* v. *Commercial Union Ins. Co.*, 411 Mass. 31, 37 (1991). Thus, it does not matter what terminology the parties include within a settlement. It will not be a "judgment" for purposes of G. L. c. 93A, § 9 (3). This antecedent motion by the plaintiffs was properly dismissed.

We remand this case to the Superior Court for a redetermination of damages in accordance with this opinion.

*So ordered.*

O'CONNOR, J. (dissenting). The complaint in this case contained five counts. The first four counts alleged that James A. Clegg (Clegg) sustained personal injuries and his wife, Katherine M. Clegg, sustained consequential damages as a result of negligence on the part of the defendants Jeff L. Butler, Louis C. Butler, and Helene M. Butler. In the fifth count, Clegg alleged that the defendant Utica Mutual Insurance Company (Utica) engaged in unfair settlement practices in violation of G. L. c. 176D, § 3 (9) (*f*), and as a result was liable to Clegg under G. L. c. 93A, § 9 (3). Trial was scheduled for June, 1994. At a mediation session on May 4, 1994, Utica, the Butlers' motor vehicle liability insurer, offered the Cleggs $250,000, the limits of its policy, and Merrimack Mutual Insurance Company (Merrimack), the Butlers' excess carrier, offered $425,000, resulting in settlement of the motor vehicle tort claims against the Butlers asserted in Counts One through Four for $675,000. Subsequently the remaining count, Count Five, against Utica, was tried jury waived and resulted in a judgment in the sum of $750,000 ($250,000 trebled) plus interest in the sum of $59,685 plus attorney's fees of $150,000 for a total of $959,685. The judgment, of course, was in addition to the $675,000 settlement of

the tort claims against the Butlers asserted in Counts One through Four.

Utica appeals from the judgment against it in connection with the issues raised by Count Five and the plaintiffs appeal from the denial of their motion for the entry of judgment with respect to the first four counts. I concur with the court's holding that the plaintiffs' motion for entry of judgment on their motor vehicle tort claims was properly denied. I do not agree, however, that this case should be remanded to the Superior Court for a "redetermination of damages" in the dispute between Clegg and Utica (Count Five). *Ante* at 426. In my view, after a full and fair opportunity, Clegg has failed to establish Utica's liability because he has failed to prove any injury or adverse impact on his rights as a result of anything Utica did or failed to do. The court should order the entry of judgment for Utica.

Massachusetts law permits a third-party claimant, as is Clegg with reference to Utica, to sue the insurer of another party when the claimant alleges, as does Clegg here, that he or she has been injured or his or her rights have been adversely affected by the insurer's violation of G. L. c. 93A, which incorporates the provisions of G. L. c. 176D, § 3 (9). *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675 (1983). The success of such a claim, of course, is contingent on the claimant's proof of injury or an adverse effect on his or her rights resulting from the insurer's conduct, a burden which Clegg has not sustained.

General Laws c. 176D, § 3 (9) (*f*), on which Clegg relies, provides in relevant part, "The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance: . . . Unfair claim settlement practices: An unfair claim settlement practice shall consist of any of the following acts or omissions: . . . (*f*) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Surely, regardless of when Utica should have offered its $250,000 limits, no payment would have been made, and none was due, without the tort claims against the Butlers having been settled and the Butlers released. When, if at all, prior to May 4, 1994, the date the tort claims were settled for $675,000, would that have happened? Neither the judge's findings nor the evidence suggests the answer. Clegg's burden was not only to

prove that Utica should have offered its policy limit sooner than May 4, 1994, but also, at a minimum, that, if Utica had done so, Merrimack too would have made an offer at an appreciable time before May 4 that the plaintiffs would have accepted. Without such proof, no injury or adverse impact on the plaintiffs in the form of loss of use of money for a period of time or otherwise has been proved.

The judge below issued a memorandum of findings of fact and conclusions of law. One of those "findings" and one of those "conclusions of law" are especially important. Finding no. 61 states, "The evidence permits the inference, which I draw, and the finding, which I make, that had Utica offered its policy limits, in late 1992, Merrimack would have made an offer at least equivalent to that which it made in May, 1994 ($425,000), and which [Clegg] accepted." Notably absent is a finding as to when, or approximately when, or by when, Merrimack would have made, and the tort plaintiffs would have accepted, such an offer. The judge states in conclusion of law no. 15 in relevant part as follows: "It is likely that had Utica tendered the policy limits earlier, the excess carrier would have settled sooner. However, I cannot determine fairly when such settlement would have occurred." The court errs when it states, *ante* at 423 n.11, in reference to finding no. 61 quoted above, that "[t]he record supports the judge's inference that Merrimack would have settled once Utica tendered its limits." The judge made no such determination. Perhaps, standing alone, finding no. 61 could fairly be construed as a determination that Merrimack would have offered at least $425,000 whenever Utica offered the limits of its policy, but the judge's conclusion of law no. 15 clearly states that the judge was unable fairly to determine when a settlement would have occurred following a $250,000 offer by Utica. The judge was not persuaded, and therefore did not make a determination, as to when or in what circumstances Merrimack would have made an offer, acceptable to the tort plaintiffs, that would have settled their claims and produced the appropriate releases. Indeed, my review of the record satisfies me that the evidence as a matter of law would not have warranted such a finding.

Settlement of the tort claims required the agreement of the plaintiffs and both insurers, Utica and Merrimack. The judge was not persuaded as to when that would have occurred if

Utica had offered its policy limits in 1992 or at any time before May 4, 1994. As a matter of law, the evidence would not have warranted such a finding. For all that appears, regardless of when, before May 4, 1994, Utica might or should have offered $250,000, the case would not have settled until it did settle as a result of the court-sponsored mediation that produced the settlement that was reached with the prospect of a prompt trial if mediation were to fail. Therefore, it cannot fairly be said that Utica failed "to effectuate prompt, fair and equitable settlement[]" of the plaintiffs' tort claims in violation of G. L. c. 176D, § 3 (9) (*f*), and that liability under G. L. c. 93A, § 9 (3), has been established. Utica was not shown to have been in position to effectuate a prompt, fair and equitable settlement before May 4, 1994. Clegg failed to persuade the judge — indeed to offer evidence — that he has been deprived of the use of an established amount of money for an established length of time. He has not proved that he has been injured or that his rights have been adversely affected by any action or inaction of Utica, see *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675, 678 (1983), as required for liability, and therefore for recovery of damages, under Count Five of the complaint. Clegg has had his day in court. There is no need, therefore, and it is inappropriate, to "remand this case to the Superior Court for a redetermination of damages." *Ante* at 426. See *Whalen* v. *NYNEX Info. Resources Co.*, 419 Mass. 792, 796-797 (1995). I would order the entry of judgment for Utica.