# DECISIONS

### OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

---

JEREMIAH BOBICK vs. UNITED STATES FIDELITY & GUARANTY INSURANCE COMPANY & others.[1]

No. 01-P-139.

Suffolk. October 15, 2002. - January 3, 2003.

Present: PORADA, DREBEN, & COHEN, JJ.

Further appellate review granted: 438 Mass. 1108 (2003).

*Insurance,* Unfair act or practice, Settlement of claim. *Practice, Civil,* Motion to amend.

In a negligence action in which the plaintiff also alleged that the insurer of a facility for rehabilitation and training had engaged in unfair settlement practices in violation of G. L. c. 176D and G. L. c. 93A, the judge erred in allowing the insurer's motion for summary judgment where, in view of medical reports, depositions of the insured's employees, and the deposition of the insurer's own claims investigator, the insurer failed to show that

---

[1]CNA Insurance Company, Continental Loss Adjusting Services, Inc., Park Transportation Co., Inc., and Walnut Street Center. The materials in the record appendix suggest that Walnut Street Center filed a third-party complaint against Rebecca Pontius and Deborah L. David. Although there was a judgment against Pontius, the record contains no indication as to the action, if any, taken against David.

there was no material fact in dispute concerning the reasonableness of its claims investigation prior to its denial of the plaintiff's claim. [3-6]

In a negligence action in which the plaintiff also alleged that the insurer of a transportation company had engaged in unfair settlement practices in violation of G. L. c. 176D and G. L. c. 93A, the insurer failed to meet its summary judgment burden, where the duty to settle did not arise until liability had become reasonably clear and the insurer failed to demonstrate that liability was not reasonably clear, or that there were no material facts in dispute concerning whether the insurer made a prompt, fair offer of settlement. [6-8]

In a negligence action, the judge did not abuse her discretion, or otherwise err, in denying the plaintiff's motion to amend his complaint by adding a claim of his sister, who was his caretaker and allegedly stood in place of his mother, for loss of consortium. [8-9]

CIVIL ACTION commenced in the Superior Court Department on October 25, 1994.

A motion to amend the complaint was heard by *Margot Botsford*, J.; the case was heard by *Diane M. Kottmyer*, J., on motions for summary judgment; and a motion to dismiss was heard by *Margaret R. Hinkle*, J.

*Hans R. Hailey* for the plaintiff.

*Richard L. Neumeier* for United States Fidelity & Guaranty Insurance Company.

*Michael P. Giunta* for CNA Insurance Company & another.

*Jacqueline L. Allen* for Walnut Street Center.

DREBEN, J. On January 15, 1993, the plaintiff, a disabled client of the Department of Mental Retardation (department), was severely injured when, unattended, he fell on ice while crossing a busy street in Somerville. Immediately prior to the accident, he had been transported by Park Transportation Co., Inc. (Park), to Walnut Street Center (Walnut) where he was left without being met by a supervisory person. Although the plaintiff usually arrived at Walnut at around 3:45 P.M. to 4:00 P.M., his absence was not noticed until about 5:00 or 5:15 P.M.

The plaintiff brought this action claiming negligence on the part of Park; Walnut, a facility for rehabilitation and training; Park's driver; and certain of Walnut's employees. He also alleged that the insurers of Park and Walnut had engaged in unfair settlement practices in violation of G. L. c. 176D and G. L. c. 93A.

The claims against the insurers are the primary focus of this

appeal. Stayed pending the outcome of the underlying negligence action,[2] the claims against United States Fidelity & Guaranty Insurance Company (USF&G), the insurer of Park, and against Walnut's insurer, CNA Insurance Company and its agent for responding to the claim, Continental Loss Adjusting Services, Inc. (hereinafter collectively referred to as Continental), were dismissed on cross motions for summary judgment. This is an appeal by the plaintiff from the judgment dismissing his action against the insurers and also from an order denying his motion to amend his complaint against Park and Walnut by adding a claim of his sister for loss of consortium. We affirm the order denying the motion to amend to assert a claim of loss of consortium on behalf of the plaintiff's sister, but reverse the judgment in favor of the insurers and remand the claims against them for further proceedings.

1. *Claims against insurers.* The issue is whether the insurers engaged in "unfair claim settlement practices" as set forth in G. L. c. 176D, § 3(9). If so, the plaintiff, who was required to institute litigation, is entitled to relief. See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675 (1983); *Hopkins* v. *Liberty Mut. Ins. Co.*, 434 Mass. 556, 566-567 (2001). The focus is on two subdivisions of § 3(9), as inserted by St. 1972, c. 543, § 1, which define as unfair or deceptive acts in the business of insurance:

> "(*d*) Refusing to pay claims without conducting a reasonable investigation based upon all available information";

> . . .

> "(*f*) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

Whether an insurer has conducted an adequate investigation

---

[2] In April, 1996, a jury determined the plaintiff's damages to be $150,000, finding Park forty per cent liable, Walnut twenty per cent liable, Walnut's manager twenty per cent liable, and the plaintiff twenty per cent liable. Accordingly, his damages were reduced by twenty per cent, resulting in an award of $120,000. A separate and final judgment entered on these claims.

before denying a claim, whether liability has become reasonably clear, and whether a settlement offer is reasonable are factual determinations. *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. at 676-677. *Demeo* v. *State Farm Mut. Auto. Ins. Co.*, 38 Mass. App. Ct. 955, 956 (1995). See *Hopkins* v. *Liberty Mut. Ins. Co.*, 434 Mass. at 568 n.18.

We turn to the material before the judge as to each insurer, looking, as we must, at the evidence and the inferences to be drawn therefrom in the light most favorable to the plaintiff, the party opposing the summary judgment motion. See *Augat* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991).

a. *Claim against Continental, Walnut's insurer.* With respect to Continental, the main question concerns the adequacy of its investigation. Hans Hailey, the plaintiff's attorney, wrote to Park and Walnut on April 20, 1993, informing them of the plaintiff's injuries and stating that there was reason to believe that both were responsible for his client's injuries. Continental assigned Rodney Roach to the matter in August, 1993. On August 24, 1993, Hailey sent Roach medical bills totaling over $80,000, a report from the department, and one from the plaintiff's orthopedic surgeon. He forwarded additional material on February 1, 1994, together with a letter discussing awards in similar cases, and requested settlement in the amount of $747,100, as that sum is "the most likely jury expectancy." Hailey also sought $127,500 for the plaintiff's sister's loss of consortium. Another letter followed on March 15, 1994, seeking a reasonable offer in response to his February 1, 1994, requests and enclosing a supplemental report of the plaintiff's surgeon indicating that the plaintiff had suffered a twenty per cent permanent partial disability. In a phone conversation in April, 1994, Roach told Hailey that he considered Park solely liable.

On August 23, 1994, Hailey sent c. 93A demand letters to Roach and to USF&G. In reply, on August 26, 1994, Roach wrote that there was nothing to suggest that Walnut was in any way negligent and that responsibility, if any, based on the report of the department, rested completely with Park. However, "in order to avoid the cost of litigation," Roach offered $3,000 in settlement of all claims. The offer was declined.

Roach kept an activity report. A March 3, 1994, entry stated

that a planned meeting with the staff of Walnut was cancelled because of weather, and noted "we need a clearer picture of the situation." No later discussions with staff appear on Roach's activity report.

Depositions of employees of Walnut taken by USF&G in October, 1995, suggest that had Roach made inquiries, he would have discovered evidence of negligence on the part of Walnut. According to those depositions, only one employee was present at Walnut on the day of the accident between 3:30 and 4:15, and although the plaintiff usually arrived between 3:45 and 4:00 P.M., his absence was not noted until approximately 5:15 P.M.

Roach in his deposition did not remember whether he had interviewed these employees, did not determine that the plaintiff was not discovered missing until about 5:00 P.M., did not know whether he had any information that would contradict the depositions of the two Walnut employees, and did not know if he had any reason to believe that the two deponents would have spoken differently if they had talked with him. Although Roach's deposition is replete with answers such as "I don't know" and "I can't recall," he did remember that two persons or more were supposed to staff Walnut's facility.

One may infer that between August, 1993, when Roach was assigned to the claim, and August, 1994, when, by his token offer, he denied the claim, Roach had had sufficient time to conduct an investigation and might have discovered the evidence contained in the depositions of Walnut's employees taken later by USF&G. See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. at 677. Accordingly, in view of the medical reports, the depositions of the employees, and Roach's own deposition, Continental has "failed to show that there was no material fact in dispute concerning the reasonableness of its claims investigation prior to its denial of the claim." *Ibid.*

Contrary to Continental's claim of having conducted a proper investigation, the motion judge recognized that the evidence "arguably" raised a substantial question of fact as to whether Continental discharged its duty to investigate the facts relevant to the plaintiff's claim. "Nonetheless, [she ruled] the plaintiff cannot recover as a matter of law because the record establishes

that the plaintiff would have and did reject a reasonable settlement offer." Her reasoning was that even if that offer was not admissible because made during mediation,[3] "absent evidence that plaintiff would have accepted a reasonable settlement offer, he has not met his burden of establishing that he was injured."

The judge was in error in placing this requirement on the plaintiff. "An insurer's statutory duty to make a prompt and fair settlement offer [or to conduct a reasonable investigation before refusing to pay claims] does not depend on the willingness of a claimant to accept such an offer. See *Metropolitan Prop. & Cas. Ins. Co.* v. *Choukas,* 47 Mass. App. Ct. 196, 200 (1999)." *Hopkins* v. *Liberty Mut. Ins. Co.,* 434 Mass. at 567. Continental's motion for summary judgment should not have been allowed, and the matter must be remanded for further proceedings to determine whether it violated G. L. c. 176D, § 3(9)(*d*).

b. *Claim against USF&G.* In a timely response to Hailey's August 23, 1994, c. 93A letter,[4] USF&G offered "$50,000 towards settlement" and indicated that the offer "represents our insured's share of the settlement."[5] The motion judge dismissed the plaintiff's claims on the basis that "the record does not establish that the settlement was unreasonable as a matter of law taking into account [among other matters] questions as to Park's liability." Her decision imposed an improper burden on the plaintiff. While in order to obtain summary judgment in his favor, the plaintiff would have had to show that the offer was unreasonable based on the materials before the judge, USF&G had a different burden in order to obtain summary judgment in its favor. Since the duty to settle does not arise until liability has become reasonably clear, *Clegg* v. *Butler,* 424 Mass. 413, 421 (1997), to prevail on its motion for summary judgment, USF&G was required to demonstrate that liability was not

---

[3]The judge was referring to an offer of $200,000 rejected at mediation in March, 1996, shortly before trial. Citing G. L. c. 233, § 23C, the plaintiff claims error in the judge's consideration of that offer. We decline to discuss the plaintiff's argument because the relevance of that offer may not be an issue on remand. Cf. *Hopkins* v. *Liberty Mut. Ins. Co.,* 434 Mass. at 567 n.16.

[4]Hailey extended the time for the offer beyond the thirty-day period provided under c. 93A, § 9(3).

[5]Hailey's demand was for $250,000, the limit of USF&G's policy.

reasonably clear,[6] see *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. at 677, or that there were no material facts in dispute concerning whether USF&G made a prompt, fair offer of settlement. See *Hopkins* v. *Liberty Mut. Ins. Co.*, 434 Mass. at 568 n.18.

A review of the record shows that USF&G has not met its summary judgment burden. While there was a dispute as to whether the plaintiff had entered Walnut's facility prior to crossing the street, it was undisputed that Park's driver did not leave the plaintiff in the hands of a Walnut staff person. Even if we discount the report of the department that found Park "remiss,"[7] Park's contract with the department required a driver, in the case of the absence of a supervisory person with whom to leave a client, to contact the dispatcher, and stated "[u]nder no circumstances shall a driver leave a client at the residence unattended." The drivers' handbook, too, provided that "[i]f no responsible person is at the residence," the driver is to "contact the office."

Moreover, USF&G's files contain material from which a fact finder could infer that liability was reasonably clear. USF&G's claim representative acknowledged in her deposition that defense counsel's initial assessment report, prepared three months after suit was filed (suit was filed October 25, 1994), estimated the likelihood of a defendant's verdict to be zero to twenty per cent. Moreover, even if Walnut was also liable and the plaintiff himself was at fault (unless his negligence exceeded fifty per cent), if Park's conduct contributed to the plaintiff's injuries, Park would be jointly and severally liable to the plaintiff. *Demeo* v. *State Farm Mut. Auto. Ins. Co.*, 38 Mass. App. Ct. at 956 n.2.

While liability encompasses both fault and damages, *Clegg* v.

---

[6]An objective test is used to decide when an insured's liability becomes "reasonably clear." "The fact finder determines 'whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insured was liable to the plaintiff.' " *O'Leary-Alison* v. *Metropolitan Property & Cas. Ins. Co.*, 52 Mass. App. Ct. 214, 217 (2001), quoting from *Demeo* v. *State Farm Mut. Auto. Ins. Co.*, 38 Mass. App. Ct. at 956-957.

[7]USF&G filed a motion to strike the report as it contained hearsay. The motion judge appears not to have acted on the motion.

*Butler,* 424 Mass. at 421, the fact that the damages were un- liquidated does not militate against their being reasonably clear. *Ibid.* The extent of the plaintiff's injuries were known; indeed, at the time of the offer, USF&G's representative had valued the claim at at least $170,000.

In view of the foregoing evidence, a fact finder, using the proper test, see note 6, *supra,* could determine that the liability of Park at the time of the offer was reasonably clear. USF&G has not demonstrated the contrary. See *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 711, 714, 716 (1991).

Similarly, USF&G has failed to show that there was no mate- rial fact in dispute concerning the reasonableness of its offer. That question should be determined by a fact finder in light of relevant evidence which may include insurance industry practices in similar circumstances and expert testimony.[8] See *Bolden* v. *O'Connor Café of Worcester, Inc.,* 50 Mass. App. Ct. 56, 67 n.16 (2000); *O'Leary-Alison* v. *Metropolitan Property & Cas. Ins. Co.,* 52 Mass. App. Ct. 214, 217 n.3 (2001). See also *Parker* v. *D'Avolio,* 40 Mass. App. Ct. 394, 395 (1996).

2. *Plaintiff's sister's claim of loss of consortium.* The plaintiff claims that his sister, who is his caretaker, stands in the shoes of his mother, and should, therefore, be entitled to recover.[9] In view of the complete lack of authority for the recognition of such a claim,[10] a fact acknowledged by the plaintiff, and the

---

[8]We do not accept the plaintiff's position that the amount of USF&G's offer was unreasonable as matter of law because it was discounted to reflect the potential liability of a joint tortfeasor. Cf. *Skaling* v. *Aetna Ins. Co.,* 799 A.2d 997, 1015 (R.I. 2002). The reasonableness of USF&G's method of calculation is for the fact finder to determine.

[9]We bypass any procedural problems with the plaintiff's appeal of the denial of his motion to amend the complaint to add his sister's claim, includ- ing whether the plaintiff has waived this claim and whether his sister should have appealed from the denial of the motion.

[10]Other than in the context of a wrongful death statute or a statute specifi- cally allowing loss of consortium damages recoverable by the "same respec- tive categories of persons who would have had a cause of action for wrongful death," *Levens* v. *Commercial Union Ins. Co.,* 485 So. 2d 521, 522 (La. Ct. App. 1986), the cases which have come to our attention indicate that jurisdic- tions which have considered the matter have denied loss of consortium dam- ages to siblings. See, e.g., *Malik* v. *William Beaumont Hosp.,* 168 Mich. App. 159, 167 (1988); *Ford Motor Co.* v. *Miles,* 967 S.W.2d 377, 382-384 (Tex.

"discerning caution" with which the Supreme Judicial Court has proceeded in this field, we hold that the motion judge did not abuse her discretion, see *Mathias* v. *Massachusetts Elec. Co.*, 409 Mass. 256, 264 (1991), or otherwise err in denying the plaintiff's motion to amend. See, e.g., *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 165 (1973); *Ferriter* v. *Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 516 (1980); *Norman* v. *Massachusetts Bay Transp. Authy.*, 403 Mass. 303, 307 (1988) (albeit overturned by St. 1989, c. 259, which enacted G. L. c. 231, § 85X); *Monahan* v. *Methuen*, 408 Mass. 381, 390 (1990). Cf. *Robert Krasnecky* v. *Meffen*, 56 Mass. App. Ct. 418, 423 (2002).

Because of our conclusion in part 1 of this opinion that there are questions of fact which must be resolved, the judgment dismissing the case against Continental and USF&G is reversed, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

1998). See also *Gallimore* v. *Children's Hosp. Med. Center*, 67 Ohio St. 3d 244, 252 (1993) (in allowing a parent consortium damages, the court agreed that a line should be drawn and only held that parents can maintain a claim. It made "no suggestion that the right does or should extend to a Gilbert and Sullivan cavalcade of 'his sisters and his cousins . . . and his aunts' "). Cf. *Hutchinson* v. *Broadlawns Med. Center*, 459 N.W.2d 273, 278 (Iowa 1990) (refusal to allow grandchild loss of consortium where grandfather stood in loco parentis).