Henry, Bruce R., J.
This matter, in which the plaintiff, William Skinner (Skinner) alleges violations by the defendant, Commerce Insurance Co. (Commerce) of G.L.c. 93A and c. 176D, was tried before me without a jury. The only witness was Marc Rischitelli (Rischitelli), a casualty consultant for Commerce. Based on his testimony and on the eighteen numbered exhibits at the trial, I make the following findings of fact and rulings.

Findings of Fact

1.On or about February 17, 1997, Skinner, a Gardner police officer, was struck by a car operated by Katherine Allaire, who was insured by Commerce. Immediately prior to that accident, Ms. Allaire had failed to stop at a stop sign. Skinner, in uniform, observed that traffic infraction and placed himself in the roadway in order to stop Ms. Allaire. There is a dispute about the manner in which Skinner placed himself in the roadway — whether he stepped into the roadway or jumped suddenly in front of Allaire’s vehicle — and about the speed of Allaire’s vehicle at the time of the incident — Skinner at one point asserted Allaire was traveling at 15-20 m.p.h. and accelerating and Commerce says it had information that she was traveling only 5-7 m.p.h. just before the accident and 3-5 m.p.h. at the point of impact. Ms. Allaire’s foot slipped from the clutch causing the car to lurch forward and strike Skinner. I cannot and do not resolve that factual dispute, but note that it existed at the time of the c. 93A demand and response.
2. Prior to Rischitelli’s taking over of the file handling, the claim made by Skinner against Ms. Allaire was handled by another claims person at Commerce. Her notes were admitted into evidence and denote Allaire’s version of events. They also reflect that a witness to the incident was interviewed and that he, essentially, supported Allaire’s version of how the accident happened. The file also contained a police report regarding the accident and Allaire’s answers to interrogatories.
3. Skinner brought suit against Allaire in the Gardner District Court. As part of the discovery in that case, Skinner answered interrogatories on or about February 1, 2001, and was deposed on that same date. In his answers to interrogatories, Skinner asserted that Allaire was traveling at 15-20 m.p.h. at the time of the accident; that he was struck by the front bumper and impacted the hood, windshield, and roof of the car; that he injured his back, neck, knee, and head; that he suffered post-traumatic stress syndrome and depression as a result of the accident; that his knee and psychological problems are permanent; that he incurred $5,000 in medical bills and $120,000 in lost wages.
4. Rischitelli attended Skinner’s deposition. The deposition was punctuated by long periods of unresponsiveness on the part of Skinner and by bouts of ciying. In addition, Skinner testified that he could not recall some necessary information. Counsel for the plaintiff and Rischitelli explored the possibiliiy of binding arbitration since their feeling was that Skinner would not be able to complete his deposition. Rischitelli testified, and I accept his testimony as credible, that at least in part the offer of binding arbitration was made out of concern for the well-being of Skinner. There was a tentative agreement with plaintiffs counsel to proceed to binding arbitration. Rischitelli did place limitations on what could be awarded at the arbitration; however, I find that the offer was made in good faith and in an attempt to limit the need for further litigation or trial.
5. Counsel for Skinner sent a 93A demand letter dated February 14,2001 (Exhibit 1), to Commerce and Commerce received it on or about February 17, 2001. In that letter, counsel for Skinner made a demand for the $20,000 limits of Allaire’s policy. Asserting that Allaire’s liability was clear, plaintiffs counsel adopted *165 Skinner’s version of the accident and the speed at which he claimed to have been struck. That letter indicated that Skinner had sustained injuries to his knee, side, back, neck, and head, and that he had received treatment for post-traumatic stress disorder and depression as a result of the accident. The letter asserted that Skinner had been hospitalized four times since the accident and had sustained medical bills between $25,000 and $50,000 and lost wages of $120,000 as a result of the accident. In the concluding paragraph of the letter, counsel for the plaintiff asserted potential claims of violations of c. 93A and c. 176D if the policy limits were not tendered by Commerce.
6. By the time of the 93A demand letter, Rischitelli had in his claim file the notes of the previous handler of the file, a police report regarding the accident, Allaire’s answers to interrogatories, medical records regarding treatment Skinner had received, and medical bills in excess of $3,000. He had attended Skinner’s deposition and appears to have had Skinner’s answers to the interrogatories in the underlying case.
7. Rischitelli responded to that letter with correspondence dated February 27, 2001 (Exhibit 9). Rischitelli pointed out the discrepancies in the descriptions of how the accident had occurred and asserted that liability for the accident was not reasonably clear. In addition, Rischitelli disputed the claimed damages and the causal relationship between those claimed damages and the accident, especially as to the claimed psychiatric damages. Arguing that the documentation supplied by the plaintiff did not support the claimed extent and cause of those damages, Rischitelli declined to make an offer of settlement at that time. He repeated an offer made at the time of the plaintiffs deposition to submit the matter to binding arbitration, which he believed had been agreed to at that time. I accept that statement as credible and I find credible the explanation given by Rischitelli as to the reasons for that willingness to submit to binding arbitration. I also accept as credible and legitimate Rischitelli’s stated concern about the causation and damage components of the plaintiffs claim.
8. At trial before me, Rischitelli acknowledged that as of the time of the 93A demand letter, he had attributed at least some fault for the accident to Allaire, Commerce’s insured. The company’s reserve for this matter was set at some point at $15,000. By the time of the receipt of the 93A demand letter, the reserve was set at $20,000, the full extent of Allaire’s coverage.
9. At the time of the receipt of the 93A demand letter, I find that Rischitelli and Commerce had the following information:
The differing accounts of Skinner’s manner of placing himself in the roadway in front of Allaire’s car and of the speed at which Allaire was traveling at the time she struck him.
Medical bills totaling approximately $3,300.
Medical records regarding the treatment claimed to have been received for injuries associated with the accident. Included in those records were reports from Dr. Robert Deters, one of which (Exhibit 18) indicates that Dr. Deters could find nothing to substantiate Skinner’s subjective complaints. There is also an indication from Dr. Deters that Skinner could return to work, with restrictions, on February 28, 1997, two weeks after the accident.
Reports of Dr. Judith Haran (Exhibit 15) and Dr. Marie Hobart (Exhibit 16) regarding their treatment of Mr. Skinner for mental problems, which indicate an exacerbation of prior mental health issues after the accident.
Report of Dr. George Lewinnick, an orthopedic surgeon, dated April 3, 1997, which indicated an essentially normal examination with no impairment by AMA criteria.
10.The underlying case in the Gardner District Court proceeded to trial and judgment for the plaintiff in the amount of $12,000, plus interest, was entered. The District Court judge found that the accident was due to Allaire’s negligence and that Skinner was not negligent. He awarded damages for medical expenses, loss of earning capacity, and pain and suffering. He found that the claimed psychiatric, psychological, and emotional conditions were in existence before the accident and were not significantly affected by that accident. (Exhibit 3.)

Applicable Law

G.L.c. 93A, §2(a) prohibits “unfair or deceptive acts or practices in the conduct of any trade or commerce . . .” G.L.c. 176D, §3, contains a similar prohibition against such conduct in the insurance business. That prohibition extends to “(u]nfair claim settlement practices,” which include “(f]ailure to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.” G.L.c. 176D, §3(9) (f). Conversely, insurers do not have an obligation to settle as to an insured whose liability is not reasonably clear. O’Leary-Alison v. Metropolitan Property & Casualty Ins. Co., 52 Mass.App.Ct. 214, 217 (2001). Those claiming injury by an insurance practice that is prohibited by G.L.c. 176D, §3(9)(f), may sue under G.L.c. 93A. Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 675 (1983). Metropolitan Property & Casualty Ins. Co. v. Choukas, 47 Mass.App.Ct. 196, 197 n.1 (1999).
“Liability,” as that word is used in G.L.c. 176D, “encompasses both fault and damages.” Id. at 199; Clegg v. Butler, 424 Mass. 413, 421 (1997). To determine whether liability is reasonably clear an objective test is used. That test is “whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurefd] was liable to the plaintiff.” Demeo v. State *166 Farm.Mut. Auto. Ins. Co., 38 Mass.App.Ct. 955, 956-57 (1995). Evidence which may be relevant to such a determination “may include insurance industry practices in similar circumstances, expert testimony that the insurer -violated sound claims practices, the defendant’s own evaluation of the plaintiffs claim, and advice given to the insurance company on the probability of success at trial. Here, the only such evidence was the defendant’s evaluation of the liability, causation, and damages aspects of the plaintiffs claims. As noted below, that evidence supports Commerce’s decision not to make an offer in response to the 93A demand letter.

Conclusions

Here, there was some legitimate concern on the part of the defendant as to fault for the accident and the cause and the extent of the claimed damages. While Rischitelli had acknowledged some amount of fault on the part of Allaire for the accident, there were factors which called into question Skinner’s version of how the accident occurred. A witness supported Allaire’s version of how the accident had happened. While that version may not have taken Allaire off the hook for some responsibility for the accident, there was enough of a question to raise the potential for a finding of comparative negligence. More importantly, the relatively minor accident, as described by Allaire and the witness, raised the question of whether the claimed damages were real and whether they were caused by the accident. In addition, the medical records and reports called into question the claims being made by the plaintiff regarding the injuries he had suffered. There were several reasons for Rischitelli to be skeptical of the claimed injuries. The medical records reflected some questioning of the existence and severity of the claimed injuries and indicated that the physical injuries had resolved in short order. A claimed knee injury was not substantiated in the records provided to Commerce. An IME done by an orthopedic surgeon found no impairment and an ability to return to work within two months of the accident. The medical bills provided to Commerce did not come near to the amount being claimed by the plaintiff. The claimed psychological injuries were even more questionable. The reports received by the defendant indicated a history of psychological problems which had long preceded the accident.
Commerce’s response to the 93A demand letter delineated its disagreement with the plaintiffs assertions. Based on what was known of the claims at that point, I find that there was a good faith disagreement over the issues of fault for the accident and of causation and the extent of the damages claimed by Skinner. Given that good faith disagreement, Commerce’s declining to make an offer of settlement at the time was reasonable and appropriate. I find that the offer to submit the matter to binding arbitration was also made in good faith. Rischitelli had attended Skinner’s deposition, which was punctuated by long periods in which the plaintiff was unresponsive or cried. In addition, Skinner testified that he could not recall necessary information. The deposition could not be concluded on the first day and Rischitelli indicated, and I accept the testimony as credible, there was concern on his part and on the part of plaintiffs counsel as to whether he would be able to finish the deposition. There was at least a tentative agreement at the time of the deposition to submit the matter to binding arbitration. I find credible Rischitelli’s testimony that at least in part the offer of binding arbitration was made for the well-being of the plaintiff. While Rischitelli placed certain limitations on that arbitration offer, I find it was made in good faith in an effort to resolve the matter without the necessity of further litigation or trial.
Given all of the above-noted factors I find that the plaintiff has not established that “a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insure[d] was liable to the plaintiff.” Demeo, 38 Mass.App.Ct. At 956-57. Liability was not reasonably clear and Commerce’s declining to make an offer of settlement was in good faith. The ultimate finding by the District Court judge in which he found Allaire negligent and awarded $12,000 in damages does not alter my conclusion. An insurer’s good faith, but mistaken, valuation of liability and/or damages does not constitute a violation of G.L.c. 176D. See O’Leary-Alison, 52 Mass.App.Ct. at 218; Parker v. D’Avolio, 40 Mass.App.Ct. 394, 395 (1996). For all of the foregoing reasons, judgment shall enter for the defendant.

ORDER

Judgment shall enter for the defendant Commerce Insurance Company.