JEREMIAH BOBICK *vs.* UNITED STATES FIDELITY AND
GUARANTY COMPANY.[1]

Suffolk. May 9, 2003. - June 27, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Insurance,* Settlement of claim, Unfair act or practice. *Consumer Protection
Act,* Unfair act or practice, Insurance. *Practice, Civil,* Motion to amend.
*Damages,* Loss of consortium.

Where fault on the part of an insured may have been ascertained by the date
that its insurer received a G. L. c. 93A demand letter from the plaintiff,
who had suffered personal injuries, but where the percentage of damages
attributable to the insurer and another insurer remained the subject of good
faith disagreement, the extent of the insurer's liability could not, as a mat-
ter of law, have been clear at the time the insurer received the demand let-
ter, and therefore, the insurer's timely extended offer to settle (for an
amount that was not substantially less than the amount ultimately
determined by a jury to be the proper measure of damages) was reasonable
as a matter of law; consequently, the judge in a civil action claiming unfair
settlement practices under G. L. c. 176D and G. L. c. 93A by the insurer
properly granted summary judgment in the insurer's favor because the
insurer had not wrongfully refused to extend a fair and reasonable settle-
ment offer. [658-663]

In a negligence action, the judge properly denied the plaintiff's motion to
amend the complaint to add a claim on behalf of the plaintiff's sister for
loss of consortium, given that this court has never recognized the right of a
sibling to bring a loss of consortium claim, and given that the language of
G. L. c. 231, § 85X, does not authorize loss of consortium claims by
siblings. [663-664]

CIVIL ACTION commenced in the Superior Court Department on
October 25, 1994.

A motion to amend the complaint was heard by *Margot Bots-
ford,* J.; the case was heard by *Diane M. Kottmyer,* J., on mo-
tions for summary judgment; and a motion to dismiss was heard
by *Margaret R. Hinkle,* J.

[1]CNA Insurance Company; Continental Loss Adjusting Services, Inc.; Park
Transportation Co., Inc. (Park); Walnut Street Center (Walnut); Deborah
David; and Rebecca Pontius are additional defendants that are not part of this
appeal.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Richard L. Neumeier* (*George Georgountzos* with him) for United States Fidelity & Guaranty Company.

*Jacqueline L. Allen* for Walnut Street Center.

*Hans R. Hailey* for Jeremiah Bobick.

*Michael P. Giunta* for Continental Loss Adjustment Services & another, was present but did not argue.

*Peter L. Puciloski* & *James B. McLindon*, for Park Transportation Co., Inc., were present but did not argue.

GREANEY, J. We granted the application of United States Fidelity and Guaranty Company (USF&G) for further appellate review in this case. The Appeals Court reversed an order granting summary judgment entered in the Superior Court that had dismissed claims that USF&G and another insurer[2] had engaged in unfair settlement practices in violation of G. L. c. 93A, in connection with a lawsuit brought by the plaintiff for personal injuries after he slipped and fell while crossing a street in Somerville. See *Bobick* v. *United States Fid. & Guar. Co.*, 57 Mass. App. Ct. 1, 9 (2003). We agree with the decision of the judge that the summary judgment record demonstrates that USF&G acted lawfully in all challenged respects. Accordingly, we now affirm the judgment in favor of USF&G.[3] We also conclude that the plaintiff's motion to amend the complaint to assert a loss of consortium claim was properly denied.

The factual background of this case may be summarized as follows. The plaintiff, a mildly retarded individual, was about sixty years old at the time of the accident that gave rise to this litigation. For approximately three weeks a month, the plaintiff resided with his sister, Pauline Graustein. One week per month, the plaintiff stayed at the Walnut Street Center (Walnut), a facil-

---

[2]Continental Insurance Company and Continental Loss Adjusting Services (together, Continental). Continental Insurance Company is an insurance company under the service mark of CNA, but it is not a party to the case.

[3]CNA filed no application for further appellate review. We thus leave undisturbed that part of the rescript of the Appeals Court reversing the summary judgment that had dismissed the case against Continental and remanding the case to the Superior Court for further proceedings. See *Bobick* v. *United States Fid. & Guar. Co.*, 57 Mass. App. Ct. 1, 9 (2003).

ity for rehabilitation and training of learning disabled individuals in Somerville. During this time, the plaintiff was employed in a sheltered workshop operated by Walnut and was transported to and from the workshop in a van by Park Transportation Co., Inc. (Park).

It was the responsibility of the operator of Park's van to ensure that passengers in the van, all developmentally disabled individuals, were met by someone at their destination. On January 15, 1993, the plaintiff apparently was left unattended after Park had transported him to Walnut. He crossed Highland Avenue, a busy main street in Somerville, to go to a convenience store and, as he approached the store, he slipped and fell on an icy embankment. This fall resulted in a displaced fracture at the head of the plaintiff's right femur. The plaintiff did not completely recover from his injuries, and, at the time of the judge's memorandum and order granting summary judgment and dismissing the plaintiff's G. L. c. 93A claim against USF&G, he walked with the aid of a walker. Medical bills for the plaintiff's care totaled in excess of $80,000.

The procedural history of this case is complicated. We relate only those prior proceedings relevant to our decision. On October 25, 1994, the plaintiff filed a complaint in the Superior Court, asserting claims of negligence against Park and Walnut, and G. L. c. 93A violations against USF&G (Park's insurer) and Continental[4] (Walnut's insurer). The latter were premised on the alleged failures of each insurance company to make a reasonable offer of settlement when liability was clear, as required by G. L. c. 176D, § 3 (9) (*f*), the statute defining unfair or deceptive acts in the business of insurance, and were stayed pending the outcome of the underlying tort claims.

The plaintiff subsequently filed a motion to amend his complaint to add, among other matters, a loss of consortium claim on behalf of his sister. A judge in the Superior Court denied the motion "insofar as it seeks to add Pauline Graustein

---

[4]The original complaint named only Continental Loss Adjusting Services, Inc., but later was amended to add CNA as a codefendant. Inexplicably, the plaintiff's original complaint and amended complaints are included in neither the record appendix nor the supplemental record appendix. Because there appears to be no dispute as to their contents, we merely note their absence.

as a plaintiff . . . . [T]here is no viable claim for [loss] of consortium on the part of a sister."

Following a trial on the plaintiff's tort claims, a jury found for the plaintiff and apportioned liability in the following manner: Park, forty per cent; Walnut, twenty per cent; Rebecca Pontius,[5] twenty per cent; and the plaintiff (comparative negligence), twenty per cent. The jury awarded the plaintiff damages in the amount of $150,000, which were reduced by the twenty per cent assigned to his negligence, resulting in a total award of $120,000. An amended judgment entered for $120,000 (plus interest and costs). The plaintiff, Walnut, Pontius, and Park subsequently filed a motion for a separate and final judgment on the underlying tort claims, and their motion was allowed.[6] On July 29, 1996, the plaintiff, and defendants Walnut, Pontius, and Park, filed a written waiver of appeal, in which they "waive[d] their rights of appeal of the within case, execution to issue immediately."

The underlying tort claims having been resolved, the remaining parties in the case, the plaintiff, USF&G, and Continental, filed motions for summary judgment on the G. L. c. 93A claims. In her written memorandum of decision, the judge concluded, essentially, that the summary judgment record (to be summarized later in this opinion) was devoid of evidence that either USF&G or Continental had engaged in unfair claim settlement practices. Accordingly, the judge allowed both insurers' motions for summary judgment, and judgment subsequently entered on the G. L. c. 93A claims in favor of USF&G and Continental. The plaintiff appealed, challenging the resolution of the summary judgment motions as well as the denial of his earlier motion to amend his complaint in order to pursue a loss of consortium claim on behalf of Graustein.

The Appeals Court affirmed the denial of the motion to amend, reversed the entry of summary judgment in favor of USF&G and Continental, and remanded the case to the Superior Court for further proceedings. See *Bobick* v. *United States Fid.*

---

[5]Rebecca Pontius, a Walnut employee, was impleaded by Park as a third-party defendant.

[6]The record does not indicate, however, that a separate and final judgment ever entered.

& *Guar. Co.*, *supra.* We turn first to the primary issue on appeal, whether judgment properly entered pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), dismissing the G. L. c. 93A action against USF&G.

1. No disputes of material fact appear in the summary judgment record, which we now summarize. USF&G received its first notice of the plaintiff's claim in a letter from the plaintiff's counsel dated May 16, 1994. The letter alleged that Park was at fault in connection with the injuries incurred by the plaintiff on January 15, 1993,[7] and provided a doctor's report, hospital records, and medical and hospital bills totaling approximately $83,000, as well as a report of an investigation conducted by the disabled persons protective commission, pursuant to G. L. c. 19C, § 5 (DPPC report). The DPPC report concluded that, although there were "numerous and conflicting accounts" of the events that took place on the date of the injury, Park had been "remiss" in its responsibilities to ensure that the plaintiff entered Walnut safely after leaving the van.[8] In addition, that letter incorporated a demand for settlement (that had been made to Continental as well) for $747,100.

USF&G made no offer in response to this letter. According to an affidavit of Deborah A. Duncan, the USF&G senior claims representative assigned to the case, Park's insurance policy with USF&G was for automobile coverage, and USF&G initially took the position that the claim was not an "auto" risk.

USF&G received a letter, dated August 23, 1994, from the plaintiff's counsel, sent pursuant to G. L. c. 93A, demanding payment of its full policy amount, $250,000. USF&G initiated

---

[7]In the letter, the plaintiff's counsel alleged: "When dropping clients off, the transportation company [Park] is required to wait until a staff member of [Walnut] comes to the van to escort the client into [Walnut]. If a staff member does not appear, the driver is required to call to let [Walnut] know of the client's arrival and wait until a staff member appears.

"These rules were not followed on January 15, 1993. [The plaintiff] was dropped off unattended and the driver of the van simply lef[t]."

[8]This document properly was excluded from the evidence at trial as inadmissible hearsay. We refer to it, nonetheless, because the prohibition against hearsay would not render the document inadmissible if offered by the plaintiff in the G. L. c. 93A claim, not for its truth, but to demonstrate the extent of USF&G's awareness of its potential liability in connection with the plaintiff's injuries.

an investigation into the plaintiff's claim.[9] This investigation included recording an interview with Park's van driver, who stated that, on the day of the plaintiff's accident, when no Walnut staff had appeared after she sounded the horn, she had escorted the plaintiff to the front door of the house, watched him enter, and then closed the door. The driver informed Duncan that she then got back in her van and waited to make sure that the plaintiff did not come back out.

In its original response to the G. L. c. 93A demand letter, on September 16, 1994, USF&G declined to offer a settlement because, in its opinion, liability was not "reasonably certain" at that time. USF&G further informed the plaintiff that "[o]ur investigation to date, which continues, of the circumstances surrounding this loss has revealed that the control of [the plaintiff] had been passed on to the personnel of [Walnut] by [Park] prior to his injury . . . . Upon the delivery and discharge of [the plaintiff] he then became the responsibility of [Walnut]." USF&G also repeated its position that the plaintiff had not received his injury "while in transport, delivery or disembarking [its] insured's vehicle" and stated that "we continue to investigate this case. When and if additional facts should be discovered linking our insured more closely to the cause of the [plaintiff's] injury our position regarding settlement will be reevaluated."

On October 17, 1994, the plaintiff extended to October 21 the thirty-day response period allowed by G. L. c. 93A, § 9 (3), and, the next day, USF&G extended to the plaintiff a settlement offer of $50,000. Duncan's deposition testimony indicates that this offer reflected USF&G's assessment of its share of the settlement offer, which USF&G had valued at $170,000 or $180,000. The plaintiff rejected this offer and immediately initiated litigation.

Three months after suit was filed, USF&G prepared a case assessment report estimating the total damages of the plaintiff's case, including incremental cost of future custodial care, to be $190,000. In addition, the report estimated chances of a verdict in USF&G's favor to be zero to twenty per cent. The report

---

[9]The plaintiff has introduced no evidence that USF&G's investigation was inadequate in any respect.

indicated that the outcome of the case rested on the fact finder's assessment of the credibility of Park's van driver, who had been required to turn the plaintiff over to the actual physical custody of a Walnut staff member before leaving. The report recommended against an immediate settlement offer and pointed to the "need to determine negligent employees of [Walnut] so as to add them as co-defendants and avoid the charitable immunity defense[10] before [Continental] will take the case seriously." The report recommended mediation.

Subsequent mediation efforts between the plaintiff, USF&G, and Continental, however, were unsuccessful. An offer of $200,000 extended to the plaintiff during mediation was rejected.[11]

We set forth the applicable law. General Laws c. 93A, § 2 (a), states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." General Laws c. 176D, § 3, in turn, prohibits "unfair or deceptive acts or practices in the business of insurance," including, in subsection (9) (f), the failure "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." We have stated that "the former statute incorporates the latter, and [accordingly] an insurer that has violated G. L. c. 176D, § 3 (9) (f), by failing to 'effectu-

---

[10]It appears that Walnut may be protected by the charitable cap of $20,000 imposed by G. L. c. 231, § 85K, on damages recoverable from a charitable corporation for a tort committed in the course of the performance of its charitable purpose.

[11]The plaintiff's attempt to characterize this offer as a privileged communication under G. L. c. 233, § 23C, is unavailing. That the offer of $200,000 was extended (presumably, jointly by USF&G and Continental) and rejected is undisputed and is relevant to demonstrate USF&G's continuing attempt to settle the plaintiff's claim and thus relieve the plaintiff of his burden to litigate. In our view, by accusing USF&G of failing to make a reasonable settlement offer, the plaintiff implicitly has waived the privilege, at least with respect to the issue whether such an offer indeed was made. See Darius v. Boston, 433 Mass. 274, 277-278 (2001), and cases cited (accepting principle that litigant may implicitly waive attorney-client privilege by injecting certain claims or defenses into case). Moreover, as noted by the judge who allowed summary judgment in favor of USF&G, if the plaintiff's position were deemed correct, there could be no evidence in cases involving alleged misfeasance by a mediator or breach of settlement agreements achieved during the mediation process.

ate prompt, fair and equitable settlements of claims in which liability has become reasonably clear,' by definition, has violated the prohibition in G. L. c. 93A, § 2, against the commission of unfair or deceptive acts or practices." *Hopkins* v. *Liberty Mut. Ins. Co.*, 434 Mass. 556, 564 (2001). Together, the statutes require an insurer, such as USF&G, "promptly to put a fair and reasonable offer on the table when liability and damages become clear, either within the thirty-day period set forth in G. L. c. 93A, § 9 (3), or as soon thereafter as liability and damages make themselves apparent." *Id.* at 566. The standard for examining the adequacy of an insurer's response to a demand for relief under G. L. c. 93A, § 9 (3) is "whether, in the circumstances, and in light of the complainant's demands, the offer is reasonable." *Clegg* v. *Butler*, 424 Mass. 413, 420 (1997), quoting *Calimlim* v. *Foreign Car Ctr., Inc.*, 392 Mass. 228, 234 (1984).

The plaintiff's claim against USF&G rests on the two-fold premise that (1) Park's liability was reasonably clear on August 23, 1994, when the plaintiff's demand pursuant to G. L. c. 93A was sent to USF&G, and (2) the $50,000 offer of settlement USF&G extended in response to that demand was neither fair nor equitable. Although these matters ordinarily are appropriately determined by a fact finder, there is no reason why the question whether an insurer has fulfilled its duties under G. L. c. 176D may not be settled in favor of an insurer on a motion pursuant to rule 56, in circumstances when undisputed material facts in the record demonstrate that the plaintiff has "no reasonable expectation of proving an essential element" of his case. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 678 (1983). Such circumstances are present here.

USF&G was not required to put a fair and reasonable offer on the table until liability and damages were apparent. See *Hopkins* v. *Liberty Mut. Ins. Co.*, *supra* at 566; *Clegg* v. *Butler*, *supra* at 418. The record leaves no doubt that, from the time the initial claim was presented to USF&G on May 16, 1994, until

USF&G's offer of settlement on October 17, 1994,[12] there existed a legitimate difference of opinion as to the extent of Park's liability.[13] The DPPC report had revealed the presence of differing accounts of events leading up the accident and suggested that Walnut, as well as Park, shared responsibility for failing to ensure the plaintiff's safety. According to deposition testimony of the plaintiff's counsel, the DPPC report was the sole evidence supporting the plaintiff's allegations of fault on Park's part.[14] USF&G's initial investigation revealed evidence that the driver of Park's van had not left the plaintiff on the sidewalk, but had physically escorted the plaintiff into the home before leaving the scene. Although USF&G's case assessment report, dated January 27, 1995, acknowledged Park's probable fault in the incident, the report also indicated a concern that Walnut employees should share the burden of liability. Indeed, the plaintiff was of the view that Walnut was also liable and sent Continental a demand letter claiming that Walnut's liability also was reasonably clear. Even when viewed in the light most favorable to the plaintiff, the record thus demonstrates that, although fault on the part of Park may have been ascertained by August 23, 1994, the percentage of damages attributable to USF&G and to Continental was still the subject of good faith disagreement. We conclude that the extent of USF&G's liability to the plaintiff cannot, as matter of law, have been clear at that time. See *Clegg* v. *Butler, supra.* This conclusion is evidenced by the jury's verdict in April, 1996, which divided liability between Park, Walnut, a Walnut employee, and the plaintiff.

Regardless whether liability was clear, on October 18, 1994, an offer of $50,000 was extended by USF&G and rejected by the plaintiff. Had this matter proceeded to trial, the burden would have been on USF&G to prove that $50,000 was a

---

[12]We note that, although this date was beyond the thirty-day period allowed by G. L. c. 93A, § 9 (3), the time period had been extended by the plaintiff, and, thus, the offer was timely.

[13]At the time, USF&G also questioned whether any liability would be covered under the automobile policy, but, in its summary judgment motion, USF&G did not rely on coverage issues as a basis for finding that its settlement offers were reasonable. We therefore do not address issues of coverage.

[14]The plaintiff's counsel testified that, although he was aware at the time that the DPPC report would be inadmissible at trial, he conducted no independent investigation into the matter on behalf of the plaintiff at that time.

reasonable offer in the circumstances and in light of the plaintiff's demands. See *Hopkins* v. *Liberty Mut. Ins. Co.*, *supra* at 568-569; *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 799 (1976). We do not accept the Appeals Court's suggestion that USF&G was required to meet this burden at trial with evidence of insurance industry practices in similar circumstances and expert testimony. See *Bobick* v. *United States Fid. & Guar. Co.*, 57 Mass. App. Ct. 1, 8 (2003). See also *Peckham* v. *Continental Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) ("That [reasonableness] is *ordinarily* a fact question does not make it *invariably* a fact question" [emphasis in original]).

We emphasize two factors. First, USF&G's own evaluation of the plaintiff's claim as of the fall of 1994, taking into consideration the plaintiff's documented medical expenses of approximately $83,000, was $170,000 to $180,000. This amount is higher than the total damage award accorded the plaintiff by the jury, and even the plaintiff does not now contend that USF&G's estimation was low. USF&G was allowed to discount this amount to reflect the potential liability of Walnut employees, who were insured by Continental and fully solvent. We reject the plaintiff's argument that the doctrine of joint liability, which allows an injured plaintiff to proceed against, and recover damages from, any or all joint tortfeasors, operates in these circumstances. The statutes at issue were enacted to encourage the settlement of insurance claims and to discourage insurers from forcing claimants into unnecessary litigation to obtain relief, see *Clegg* v. *Butler*, *supra* at 419, but do not require an insurer to settle not only its own, but another solvent tortfeasor's liability.[15] We are aware of no authority that supports the plaintiff's position.

Second, the reasonableness of an insurer's response is to be

---

[15]The situation would be different in circumstances where a plaintiff's potential recovery against other tortfeasors was barred by reason of insolvency, limited by a statutory cap on damages, or remote, due to a weak theory of liability, or a paucity of facts pertaining to liability. Although USF&G may have suspected, at the time the offer was made, that the plaintiff's potential recovery against Walnut could be limited by the charitable cap of $20,000 set forth in G. L. c. 231, § 85K, USF&G would have been aware that Walnut's employees, also insured by Continental, were not protected by the cap. See *Mullins* v. *Pine Manor College*, 389 Mass. 47, 63-64 (1983).

considered in the light of the situation as a whole. "Negotiating a settlement, particularly when the damages are unliquidated is, to an extent, a legitimate bargaining process. The statute [G. L. c. 176D, § 3 (9)] does not call for [a] defendant's final offer, but only one within the scope of reasonableness. Experienced negotiators do not make their final offer first off, and experienced negotiators do not expect it, or take seriously a representation that it is." *Forcucci* v. *United States Fid. & Guar. Co.*, 11 F.3d 1, 2 (1st Cir. 1993). It is particularly significant that the offer extended by USF&G (and rejected by the plaintiff) was only $10,000 less than the principal amount assessed by the jury against USF&G.[16] To be sure, a jury's verdict is not always predictable and may not constitute in all circumstances a definitive measure of reasonableness. Nevertheless, in circumstances, as here, when an offer timely extended is not substantially less than the amount ultimately determined by a jury to be the proper measure of damages, and in the absence of any evidence to the contrary, a thoughtful fact finder could reach but one conclusion, that the offer in question was reasonable. We conclude that the $50,000 offered to the plaintiff by USF&G was a reasonable offer as a matter of law.

We make final observations to clarify a subject of apparent confusion. Neither G. L. c. 176D nor G. L. c. 93A, of course, required USF&G to accede to the plaintiff's demand of $250,000, made in his G. L. c. 93A letter. Even excessive demands on the part of a claimant, however, do not relieve an insurer of its statutory duty to extend a prompt and equitable offer of settlement once liability and damages are reasonably clear. They may be considered as part of the over-all circumstances affecting the amount that would qualify as a reasonable offer in response, but the underlying duty to effectuate a prompt, fair, and equitable settlement remains unaltered.

The judge's written memorandum and order on the motions for summary judgment indicates that her decision was based, in part, on the plaintiff's failure to demonstrate that he would have been willing to accept a reasonable settlement offer at any time

---

[16]USF&G ultimately paid approximately $75,000 (including interest and costs) as its share of the plaintiff's damages. At the time of USF&G's offer, neither interest nor costs had begun to accrue.

before trial. This is incorrect. We rejected a similar argument in *Hopkins* v. *Liberty Mut. Ins. Co.*, 434 Mass. 556, 567 (2001), decided after the entry of summary judgment in this case, in circumstances when no settlement offer was forthcoming. Cf. *Metropolitan Prop. & Cas. Ins. Co.* v. *Choukas*, 47 Mass. App. Ct. 196, 200 (1999), overruled on other grounds, *Murphy* v. *National Union Fire Ins. Co.*, 438 Mass. 529, 533 n.7 (2003). In the *Hopkins* case, we noted that "quantifying the damages for the injury incurred by the plaintiff as a result of [an insurer's] failure under G. L. c. 176D, § 3 (9) (*f*), does not turn on whether the plaintiff can show that [he] would have taken advantage of an earlier settlement opportunity. The so-called causation factor entitles a plaintiff . . . to recover interest on the loss of use of money that should have been, but was not, offered . . . . It is this amount of money that has been wrongfully withheld from the plaintiff, and it is this sum on which the defendant must pay interest to remedy its wrongdoing." *Id.* See *Clegg* v. *Butler*, *supra* at 419, quoting *Schwartz* v. *Rose*, 418 Mass. 41, 48 (1994) ("This is precisely the type of damage we have described as appropriate[] . . . in an action . . . under [G. L.] c. 93A"). The plaintiff can demonstrate no injury in this case, not because he cannot prove that a higher offer would have been accepted if made, but because there was no wrongful refusal on USF&G's part to extend a fair and reasonable settlement offer.

2. The relevant portion of the plaintiff's motion to amend the complaint to add a loss of consortium claim had been denied well before judgment entered on the plaintiff's tort claims against Walnut, Pontius, and Park. A joint motion for entry of separate and final judgment was allowed on August 1, 1996. The waiver filed at that time by the parties with respect to "their rights of appeal of the within case" allowed for immediate execution on the judgment. Thus, the plaintiff's right to appeal from the denial of his motion to amend may have been waived.[17]

Putting aside the waiver issue, the judge properly denied the

---

[17]We use the words "may have been waived" because the loss of consortium claim belonged to the plaintiff's sister, not to the plaintiff, and, thus, his waiver may not have been operative as to her claim. No one argues this precise point, so we merely note it and dispose of the asserted claim on its merits.

motion. In view of the status of the law with respect to consortium claims, the plaintiff's proposed amendment would have been futile. See *Mathis* v. *Massachusetts Elec. Co.*, 409 Mass. 256, 264-265 (1991). We have never recognized the right of a sibling to bring a loss of consortium claim and, in fact, have repeatedly rejected attempts to extend such claims past an actual spouse or parent-child relationship. See, e.g., *Mendoza* v. *B.L.H. Elecs.*, 403 Mass. 437, 438 (1988) (stepson); *Feliciano* v. *Rosemar Silver Co.*, 401 Mass. 141, 142 (1987) (de facto spouse).[18] The loss of filial consortium statute, G. L. c. 231, § 85X, inserted by St. 1989, c. 259, § 1, authorizes loss of consortium claims by "parents of a minor child or an adult child who is dependent on his parents for support," and its explicit language does not extend to claims by siblings. See *Leibovich* v. *Antonellis*, 410 Mass. 568, 579 (1991) (loss of filial consortium statute is "narrowly drawn").

3. We affirm that part of the judgment dismissing the plaintiff's claim against USF&G. The judgment against Continental will be the judgment directed by the Appeals Court. See note 3, *supra*.

*So ordered.*

---

[18]The decision of *Morgan* v. *Lalumiere*, 22 Mass. App. Ct. 262, 270 (1986), in which the Appeals Court allowed a loss of consortium claim brought by a handicapped adult who was "physically, emotionally and financially" dependent on an injured parent, is inapposite.