NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-927                                    Appeals Court


        MICHAEL CAIRA  vs.  ZURICH AMERICAN INSURANCE CO.


                        No. 16-P-927.

        Essex.      February 2, 2017. - April 21, 2017.

          Present:  Grainger, Sullivan, & Lemire, JJ.



Motor Vehicle, Insurance.  Insurance, Unfair act or practice,
     Settlement of claim.  Consumer Protection Act, Unfair act
     or practice, Insurance.  Practice, Civil, Consumer
     protection case, Summary judgment, Continuance, Discovery.




     Civil action commenced in the Superior Court Department on
April 9, 2015.

     A motion for a continuance was heard by Timothy Q. Feeley,
J., and the case was heard by him on a motion for summary
judgment.


     Mark T. Rumson (Paul F.X. Yasi also present) for the
plaintiff.
     Jane A. Horne (Allen N. David also present) for the
defendant.


     LEMIRE, J.  In this case, we consider whether a judge in

the Superior Court erred in granting summary judgment to Zurich

American Insurance Co. (Zurich) on a complaint alleging that

Zurich committed unfair claim settlement practices in violation of G. L. c. 176D, § 3(9)(f), and G. L. c. 93A, § 2. We conclude that Zurich did not violate these statutory provisions when it conditioned the payment of its primary insurance policy limit on a release of all claims against its insureds, notwithstanding the availability of excess insurance. Accordingly, we affirm.

Background. Shortly after midnight on September 14, 2013, Daniel Madigan-Fried was driving a rental car in Swampscott when he was involved in a one-vehicle accident. The plaintiff, Michael Caira, who was a passenger in the front seat, suffered life-threatening injuries, and the two passengers in the back seat sustained serious injuries. A few weeks before the accident, Madigan-Fried had rented the vehicle in his capacity as an employee of Groom Construction Co., Inc. (Groom). Zurich had issued to Groom the primary commercial automobile insurance policy that was in place at the time of the accident. The bodily injury coverage under the policy was $1 million. In addition, Groom had two excess insurance policies issued by Starr Indemnity & Liability Company (Starr Indemnity) and Navigators Insurance Company (collectively, excess insurers) that provided coverage of $5 million each.[1]

---

[1] "An insurance program involving a primary policy and one or more excess policies divides risk into distinct units and insures each unit individually. The individual insurers do not (absent a specific provision) act as coinsurers of the entirety

On October 29, 2013, Caira filed a complaint in the Superior Court against Madigan-Fried and Groom, alleging negligence.[2] Caira claimed that excessive speed caused Madigan-Fried to lose control of the vehicle and to crash into a granite wall. Zurich undertook the defense of Madigan-Fried and Groom.

Between December 23, 2014, and July 15, 2015, thirteen letters were exchanged between Caira and Zurich regarding the settlement of Caira's negligence claims against Madigan-Fried and Groom. In his initial demand letter dated December 23, 2014, written pursuant to G. L. c. 176D, § 3(9)(f) and (n), Caira asserted that it was reasonably clear that Madigan-Fried was liable for both the accident and the resulting damages (which purportedly exceeded $1 million),[3] and that Zurich had an

---

of the risk. Rather, each insurer contracts with the insured individually to cover a particular portion of the risk. . . . The layer of risk each insurer covers is defined and distinct." Allmerica Financial Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 629-630 (2007).

[2] Caira's complaint was later consolidated with a complaint that had been filed by the two back seat passengers against Madigan-Fried and Groom. In May, 2015, Zurich settled the claims of the back seat passengers for a total of $230,000, thereby reducing Zurich's $1 million policy limit to $770,000. The back seat passengers executed general releases of Madigan-Fried and Groom.

[3] On September 26, 2014, Madigan-Fried had pleaded guilty to one count of negligent operation of a motor vehicle in a related criminal proceeding.

obligation to tender a settlement to Caira.[4]  The letter stated that in exchange for the $1 million insurance policy limit, Caira would release Zurich from further claims of any kind. This proposed settlement, however, did not include an offer to release either Madigan-Fried or Groom because Caira intended to continue litigating his claims for additional damages.  Caira stated, however, that if Zurich met his demand for the $1 million policy limit, he would enter into an agreement with Madigan-Fried and Groom to seek recovery of any future judgments only from one or both of the excess insurers.  Caira demanded a response within sixty days.

Zurich responded by electronic mail message (e-mail) dated February 4, 2015, declining Caira's offer to release Zurich, but not Madigan-Fried and Groom, from any additional claims in exchange for the $1 million policy limit.  Zurich stated that, because discovery had just begun and because there had not yet been any independent medical examinations, the matters of liability and damages remained substantially unresolved.  In addition, Zurich stated that paying the policy limit without receiving a release could expose Zurich to a claim of bad faith by its insureds (Madigan-Fried and Groom), and could jeopardize

---

[4] In his letter, Caira stated that the demands made pursuant to G. L. c. 176D, § 3(9)(f) and (n), were in no way intended to suggest that Zurich had already violated either of these statutory provisions.

any excess insurance coverage to which Madigan-Fried and Groom might be entitled in the event that Zurich's policy was exhausted.

In a subsequent demand letter dated February 10, 2015, written pursuant to G. L. c. 93A, § 9(3), Caira asserted that Zurich's failure to conduct a reasonable investigation and to make an equitable offer of settlement constituted wilful and knowing violations of G. L. c. 176D, § 3(9)(c), (d), and (f), and per se violations of G. L. c. 93A, § 2. The letter reiterated Caira's demand for Zurich's $1 million policy limit in exchange for the partial resolution of Caira's claims against Madigan-Fried and Groom. Caira stated that an untimely response or an unreasonable offer of settlement would result in the amendment of his complaint to include a claim for unfair claim settlement practices against Zurich.

By letter dated February 13, 2015, Zurich responded that, in reliance on Lazaris v. Metropolitan Property & Cas. Ins. Co., 428 Mass. 502 (1998), it properly could condition the payment of its policy limit on the receipt of a release of its insureds. In Zurich's view, nothing in Lazaris or its progeny turned on the existence or nonexistence of excess insurance. Assuming for purposes of its response that liability was reasonably clear and that Caira's damages exceeded the $1 million policy limit,

Zurich stated that it would only entertain settlement proposals that provided for a release of Madigan-Fried and Groom.

On March 19, 2015, Caira moved to amend his complaint to add a claim against Zurich for unfair claim settlement practices in violation of G. L. c. 176D, § 3(9)(f), and G. L. c. 93A, § 2. A judge allowed the motion, and he stayed the claim against Zurich pending the resolution of the underlying negligence claims.

Meanwhile, by letter dated April 8, 2015, Caira demanded a settlement from Zurich and the two excess insurers in the amount of $3.9 million. Caira asserted that Madigan-Fried's liability for the motor vehicle accident was clear. Zurich responded by letter dated May 7, 2015, reiterating its position that, absent a release of Madigan-Fried and Groom, Zurich was not in a position to make a settlement offer.

In an e-mail dated May 12, 2015, Caira challenged Zurich's reliance on Lazaris and stated that the excess insurance protected, and effectively released, Madigan-Fried and Groom from any future personal liability for damages arising from the motor vehicle accident. Caira again demanded a settlement in the amount of $3.9 million, and he agreed that the tender of such amount by Zurich and the excess insurers would result in

the release of all claims against Madigan-Fried and Groom.[5]
Zurich responded by letter dated June 9, 2015, pointing out
that, for the first time, Caira was offering a release of
Madigan-Fried and Groom in exchange for the demanded settlement
payment of $3.9 million.  Zurich stated that it was willing to
offer Caira its remaining policy limit of $770,000 in settlement
of his claims and in exchange for a general release of its
insureds.  See note 2, supra.

By e-mail dated June 12, 2015, Caira indicated his
willingness to accept payment of $770,000 from Zurich,
conditioned not on a release of Madigan-Fried or Groom, but on
an agreement with each of them that any judgment subsequently
entered against either or both, in excess of $770,000, would be
collected only from the excess insurers.  Caira stated that he
would continue to pursue additional claims for damages and would
endeavor to settle such claims with Starr Indemnity.  Caira also
stated that nothing in his settlement proposal should be
construed as an offer to release his unfair claim settlement
practices claim against Zurich.  The offer was to remain open
for five days.  When there was no response within this time
frame, Caira sent Zurich another e-mail, dated June 19, 2015,
asking for an explanation for the denial of his settlement

---

[5] Caira's letter dated May 12, 2015, was sent only to
Zurich, and not to the excess insurers.

proposal.  Zurich responded the same day by clarifying that it had not denied Caira's claim, and that its offer of the $770,000 policy limit in exchange for a release of Madigan-Fried and Groom remained open.[6]

In another demand letter dated June 29, 2015, written pursuant to G. L. c. 93A, § 9(3), and G. L. c. 176D, § 3(9)(f) and (n), Caira asserted, among other things, that Zurich's imposition of an inequitable condition on its settlement offer, namely, the general release of its insureds, violated G. L. c. 176D, § 3(9)(f), and G. L. c. 93A, § 2.  In Caira's view, Zurich unreasonably sought a release not only of its insureds, but also of the excess insurers because once Caira released his claims against Madigan-Fried and Groom, there could never be any additional judgment beyond the $770,000 tendered by Zurich, and the excess insurers would not have a duty of indemnification. Caira reiterated his demand for the settlement he had proposed in his e-mail dated June 12, 2015.

Zurich responded by letter dated July 15, 2015, stating that if Caira was interested in settling with Zurich, then he could accept Zurich's offer of its $770,000 policy limit and provide a release of Madigan-Fried and Groom.  What Caira could

---

[6] On June 19, 2015, Caira moved for partial summary judgment with respect to his claim of negligence against Madigan-Fried. The motion was denied on the ground that there were genuine issues of material fact regarding Caira's comparative negligence in the causation of his injuries.

not do, in its view, was "settle" with Zurich for $770,000, refuse to proffer a release, and continue to litigate his claims. Zurich reiterated that its settlement position was consistent with Lazaris.[7]

On November 11, 2015, Starr Indemnity settled Caira's claims against Madigan-Fried for $900,000.[8] The settlement was funded by Zurich's remaining policy limit of $770,000, and by $130,000 from Starr Indemnity.[9] Caira executed a general release of Madigan-Fried, Groom, and the excess insurers. The release explicitly excluded Caira's claim against Zurich for unfair claim settlement practices. On December 21, 2015, the parties filed a stipulation, with prejudice and without costs or attorney's fees, dismissing all of Caira's claims except his claim against Zurich under G. L. c. 176D and G. L. c. 93A.

On February 18, 2016, Zurich moved for summary judgment, arguing that Caira could not satisfy his burden of proof under G. L. c. 176D, § 3(9)(f), where Zurich had offered its policy

---

[7] On August 21, 2015, Groom moved for summary judgment, arguing that because Madigan-Fried was not acting in the scope of his employment at the time of the motor vehicle accident, Groom was not vicariously liable for his actions. A judge agreed and dismissed Caira's negligence claim against Groom.

[8] In addition to his negligence claim, Caira had amended his complaint to add a claim against Madigan-Fried for wanton and reckless conduct.

[9] In September, 2015, Zurich had tendered its remaining policy limit of $770,000 to Starr Indemnity.

limit on multiple occasions, conditioned only on Caira's release of his claims against Madigan-Fried and Groom. Caira opposed and also requested, in the alternative, a continuance pursuant to Mass.R.Civ.P. 56(f), 365 Mass. 824 (1974), so he could conduct additional discovery. Following a hearing, a judge[10] denied Caira's motion for a continuance, allowed Zurich's motion for summary judgment, and dismissed Caira's claim against Zurich for unfair claim settlement practices.

With respect to Caira's request for a continuance, the judge stated that Caira had not been precluded from ascertaining facts that were essential to his opposition to Zurich's motion for summary judgment. Given that Zurich's settlement position was based on a question of law, namely, the interpretation of Lazaris, the judge concluded that additional discovery would have no bearing on the adjudication of Zurich's motion.

As to the merits, the judge stated that, for purposes of G. L. c. 176D, liability for the accident, including damages up to if not exceeding the policy limit, was reasonably clear by the time the parties started settlement discussions in December, 2014. Zurich's settlement position consistently was based on its reading of Lazaris, to the effect that Zurich was not obligated to pay its available policy limit without a concomitant release of its insureds by Caira. The judge stated

---

[10] The same judge to whom we referred in note 7, supra.

that there was no evidence suggesting an absence of good faith or the presence of extortionate tactics by Zurich. Zurich had responded to Caira's various demands in a timely manner, Zurich did not drag out settlement discussions, and Caira had made strategic choices that largely determined the pace of the litigation. The judge stated that, based on his reading of Lazaris, it was reasonable for Zurich to condition its payment of the available policy limit on the receipt of a general release of Madigan-Fried and Groom, irrespective of the availability of excess insurance. Accordingly, the judge concluded that Zurich did not engage in unfair claim settlement practices in violation of G. L. c. 176D, § 3(9)(f), and, therefore, was entitled to judgment as a matter of law.[11] The present appeal ensued.

---

[11] In his second amended complaint, Caira also had alleged that Zurich failed to conduct a reasonable investigation as to liability and damages in violation of G. L. c. 176D, § 3(9)(c) and (d). The judge concluded that this was not a claims investigation case and, that therefore, Zurich was entitled to summary judgment with respect to these purported statutory violations. Because Caira has not challenged this ruling on appeal, we do not consider it further. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In a similar vein, Caira asserted in correspondence between the parties that Zurich violated G. L. c. 176D, § 3(9)(n), by failing to provide a reasonable explanation for denying Caira's claim or for offering a compromise settlement. The judge concluded that § 3(9)(n) was not applicable in this case where Zurich had never denied coverage of Caira's claim or offered a compromise settlement, and where Caira was well aware of the legal basis for Zurich's unwillingness to pay its policy limit absent a release of its insureds. Because Caira also has not challenged this ruling on

Discussion.  1.  Standard of review.  Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002).  See also Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).  "[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if [it] demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case."  Ibid.  See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991) (moving party's burden "need not be met by affirmative evidence negating an essential element of the plaintiff's case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial").  See also Bobick v. United States Fid. & Guar. Co., 439 Mass. 652, 659 (2003) (question whether insurer has fulfilled obligations under G. L. c. 176D may be resolved by summary judgment).  We review a decision to grant summary judgment de novo, construing all facts in favor of the nonmoving party.  See Miller v. Cotter, 448 Mass. 671, 676 (2007).

appeal, we do not consider it further.  See Mass.R.A.P. 16(a)(4).

2.  Unfair claim settlement practices.  General Laws
c. 93A, § 2(a), inserted by St. 1967, c. 813, § 1, provides that
"unfair or deceptive acts or practices in the conduct of any
trade or commerce" are unlawful.  General Laws c. 176D, § 2,
sets forth a similar prohibition against such conduct in the
insurance business.  That prohibition encompasses "[u]nfair
claim settlement practices," including the "[f]ail[ure] to
effectuate prompt, fair and equitable settlements of claims in
which liability has become reasonably clear."  G. L. c. 176D,
§ 3(9), inserted by St. 1972, c. 543, § 1.  Any person whose
rights have been affected by an insurance practice that violates
G. L. c. 176D, § 3(9), may sue under G. L. c. 93A.  See Van Dyke
v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 675 (1983).
General Laws c. 176D and c. 93A "were enacted to encourage the
settlement of insurance claims . . . and discourage insurers
from forcing claimants into unnecessary litigation to obtain
relief."  Clegg v. Butler, 424 Mass. 413, 419 (1997).  See
Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 562 (2001).

Taken together, G. L. c. 176D, § 3(9)(f), and c. 93A, § 9,
"require an insurer such as [Zurich] promptly to put a fair and
reasonable offer on the table when liability and damages become
clear, either within the thirty-day period set forth in G. L.
c. 93A, § 9(3), or as soon thereafter as liability and damages
make themselves apparent."  Hopkins v. Liberty Mut. Ins. Co.,

supra at 566. "Our standard for examining the adequacy of an insurer's response to a demand for relief under G. L. c. 93A, § 9(3), is 'whether, in the circumstances, and in light of the complainant's demands, the offer is reasonable.'" Clegg v. Butler, supra at 420, quoting from Calimlim v. Foreign Car Center, Inc., 392 Mass. 228, 234 (1984). "[T]he reasonableness of an insurer's response is to be considered in the light of the situation as a whole," bearing in mind that the negotiation of a settlement is "a legitimate bargaining process." Bobick v. United States Fid. & Guar. Co., 439 Mass. at 661-662.

Liability under G. L. c. 176D and c. 93A based on unfair claim settlement practices is generally characterized by "[a]n absence of good faith and the presence of extortionate tactics." Guity v. Commerce Ins. Co., 36 Mass. App. Ct. 339, 344 (1994). In contrast, "[a] plausible, reasoned legal position that may ultimately turn out to be mistaken [or unsuccessful] is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D." Id. at 343.

As an initial matter, there is no real dispute in this case regarding liability. Notwithstanding that Caira's motion for summary judgment as to Madigan-Fried's negligence was denied, see note 6, supra, Zurich nonetheless assumed, for purposes of responding to Caira's demand under G. L. c. 176D, that Madigan-Fried's liability was reasonably clear, and that Caira's damages

exceeded the $1 million limit of Zurich's insurance policy. Zurich did not raise comparative negligence as a basis for challenging Caira's settlement demands. Instead, Zurich's willingness to tender its available policy limit was conditioned on receipt of a release of its insureds. We conclude that the judge properly found that liability was reasonably clear when the parties started settlement negotiations.

Given that liability was reasonably clear, Caira argues on appeal that Zurich failed to effectuate a prompt, fair, and equitable settlement of his claim as required by G. L. c. 176D, § 3(9)(f). In Caira's view, Zurich erroneously relied on Lazaris v. Metropolitan Property & Cas. Ins. Co., 428 Mass. at 504-506, to support its contention that Zurich need not pay its policy limit absent a release of its insureds, and the judge erroneously relied on Lazaris in allowing summary judgment. We disagree.

In Lazaris, the court clarified an insurer's obligation under § 3(9)(f) in situations where liability is reasonably clear and the claimant's damages unquestionably exceed the coverage set forth in the insured's policy. 428 Mass. at 504. The court concluded that, in such circumstances, an insurer does not violate § 3(9)(f) by insisting on a release of its insured

as a condition of the payment of its policy limit.[12]  Lazaris,
supra at 504-505.  Contrast Davis v. Allstate Ins. Co., 434
Mass. 174, 179 (2001).

In reaching this conclusion, the court stated that "a claim
is settled within the meaning of § 3(9)(f) only when it is fully
disposed of, which means that the claimant has released all
claims against the insured."  428 Mass. at 504.  See MacInnis v.
Aetna Life & Cas. Co., 403 Mass. 220, 226 (1988) (settlement
typically involves "release or termination of further claims
against the tortfeasor").  The court acknowledged that where
liability is reasonably clear and in an amount that is
substantially more than the policy limit, an insurer cannot
effectuate a fair and equitable settlement because payment of
the policy limit in exchange for a release will not fully
compensate the claimant for the damages sustained.  Lazaris,
supra at 505-506.  The best that the insurer can do to
effectuate a settlement is to offer the policy limit in exchange
for a release, given that payment without a release is not a

---

[12] In Lazaris v. Metropolitan Property & Cas. Ins. Co.,
supra at 504-505, the court overruled Thaler v. American Ins.
Co., 34 Mass. App. Ct. 639 (1993), which held that an insurance
company violates G. L. c. 176D, § 3(9)(f), if it insists on a
release as a condition of payment of the policy limit where the
liability of the insured "is undisputed and damages clearly
exceed the policy limits."  34 Mass. App. Ct. at 643.  By
demanding the limit of Zurich's insurance policy without
offering a release of Madigan-Fried and Groom, Caira seeks to
resurrect Thaler.

settlement.  Id. at 506.  The claimant then can decide whether to accept the offer or to decline the offer and proceed to trial.  Ibid.

"While [an] insurer has a duty to respond promptly to demands by a claimant and to effectuate prompt settlement, it also has an obligation to protect the interests of its insured, and to guard against bad faith claims."  Gore v. Arbella Mut. Ins. Co., 77 Mass. App. Ct. 518, 525-526 (2010).  See Flattery v. Gregory, 397 Mass. 143, 150 (1986) (third-party claimants are intended beneficiaries under optional automobile liability insurance policies).  The court in Lazaris did not construe G. L. c. 176D, § 3(9)(f), as placing an insurer in the position of either being sued for unfair claim settlement practices by a claimant who is disgruntled by the insurer's failure to pay, or being sued by an insured who is disgruntled by the insurer's payment of the policy limit without obtaining a release of the insured.  428 Mass. at 506.  Rather, the court concluded that, even where the claimant's damages exceed the policy limit, an insurer can insist on a release of all claims against its insured before tendering the policy limit, without running afoul of G. L. c. 176D, § 3(9)(f), and c. 93A.  Lazaris, supra. Contrast Davis v. Allstate Ins. Co., 434 Mass. at 179.  An insurer who acts in good faith to protect the interests of its insured from additional liability will not be deemed to have

committed an unfair settlement practice.  Lazaris, supra.  An insurer need not forsake its demand for a release in order to enable a claimant to collect additional damages, either from the insureds themselves or from an excess insurance policy.  If the court in Lazaris had wanted to carve out an exception to its ruling for cases where excess insurance is available, it could have done so.

From the commencement of settlement negotiations on December 23, 2014, it was clear that Caira wanted to receive the insurance policy limit but was unwilling to provide a release of Madigan-Fried and Groom.  Zurich responded in a timely manner by conditioning the payment of the available policy limit on the release of all claims against its insureds.  During their ensuing negotiations over several months, neither party wavered from its essential demand.  In our view, Zurich's settlement position was reasonably and correctly based on its interpretation of Lazaris, 428 Mass. at 504-506.  Simply put, "to pay without a release is not a settlement."  Id. at 506.  The availability of excess insurance did not change the applicability of Lazaris to the facts in the present case, and was not material to Zurich's legally sound settlement position.  Accordingly, we conclude that Zurich did not engage in unfair claim settlement practices in violation of G. L. c. 176D,

§ 3(9)(f), and c. 93A, § 2.  The judge properly granted summary judgment in its favor.

3.  Request for continuance.  Caira contends that the judge erred in denying Caira's motion for a continuance of the summary judgment hearing.  Rule 56(f) of the Massachusetts Rules of Civil Procedure permits a judge to grant a continuance where a nonmoving party needs to conduct discovery or to take depositions for the purpose of presenting facts in opposition to the summary judgment motion.  Caira argues that more extensive discovery, including depositions of employees of Zurich, was necessary to produce additional evidence of unfair claim settlement practices.  We disagree.

A judge's refusal to grant a continuance is "a discretionary ruling which will be set aside only upon a clear showing of an abuse of discretion."  Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 307 (1991).  "One common reason for the denial of a continuance . . . is the irrelevance of further discovery to the issue being adjudicated in summary judgment."  Id. at 308.  Here, the judge's decision was predicated on whether, pursuant to Lazaris, it was proper for Zurich to condition the offer of its policy limit on a release of its insureds.  As the judgment was based on the determination that Zurich acted in good faith to protect its insureds, which, as a matter of law, is not an unfair or deceptive act,

additional discovery purporting to show bad faith on other grounds would have been immaterial.  Accordingly, we conclude that the judge did not abuse his discretion in denying Caira's motion for a continuance.

<u>Judgment affirmed</u>.