NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-249

LIBERTY MUTUAL INSURANCE COMPANY[1]

vs.

MANSOUR CONSTRUCTION, INC., & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In January 2015 Steven Reis, an employee of Mansour Construction, Inc. (Mansour), was tragically killed when he was struck by a falling load of sheetrock while working in a trench at a construction site. A few months later, Reis's estate brought a wrongful death action (Reis lawsuit) against the general contractor, Suffolk Construction Company (Suffolk), among others. Suffolk then filed a third-party complaint against its subcontractor Mansour, claiming that Mansour had a duty under the subcontract to defend and indemnify Suffolk.

----

[1] As assignee and subrogee of Suffolk Construction Company, Inc., and subrogee of Liberty Construction Services, LLC.

[2] Travelers Indemnity Company and St. Paul Fire and Marine Insurance Company.

After the Reis lawsuit settled in 2018, Suffolk's insurer, Liberty Mutual Insurance Company (Liberty), was substituted for Suffolk as the third-party plaintiff on the claims against Mansour.  Later, Liberty amended the third-party complaint to add G. L. c. 93A claims against Mansour's insurers, Traveler's Indemnity Company and St. Paul Fire and Marine Insurance Company,[3] alleging they engaged in unfair settlement practices. Liberty's claims against Mansour were tried to a jury, resulting in a verdict for Mansour.  The judge who presided over the jury trial (first judge) then denied Liberty's motion for judgment notwithstanding the verdict (judgment n.o.v.) or for a new trial.  Liberty's c. 93A claims proceeded to a bench trial before a different judge (second judge), who found that Liberty failed to prove that Travelers engaged in unfair settlement practices.  Judgment entered accordingly, and Liberty appeals. We affirm.

1.  Claims against Mansour.  The subcontract between Mansour and Suffolk requires Mansour to defend and indemnify Suffolk against claims "caused by, arising out of, resulting from, or occurring in connection with" Mansour's work on the construction project.  The subcontract also requires Mansour to

---

[3] These two companies merged in 2004.  We will refer to them together as "Travelers."

2

defend and indemnify Suffolk against claims resulting from Mansour's violations of safety regulations, including regulations issued by the Occupational Safety and Health Administration (OSHA). In returning a verdict for Mansour, the jury found that Mansour did not breach these contractual obligations and answered "No" to the question, "Did any action or inaction of Mansour . . . bring about or provoke the mishap that resulted in the death of Mr. Reis?" On appeal Liberty argues that the evidence compelled contrary findings and that its motion for judgment n.o.v. should therefore have been allowed. We are unpersuaded.

Our review of a denial of a motion for judgment n.o.v. is de novo. See Gyulakian v. Lexus of Watertown, Inc., 475 Mass. 290, 295 n.11 (2016). The standard we employ is highly deferential to the jury verdict, which must be sustained if "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the nonmoving party." Id., quoting Esler v. Sylvia-Reardon, 473 Mass. 775, 780 (2016). In conducting this inquiry, we must consider the evidence "in the light most favorable to the [nonmoving party], without weighing the credibility of the witnesses or otherwise considering the weight of the evidence," while "disregard[ing]

3

the evidence favorable to the [moving party]" (quotations and citations omitted). Gyulakian, supra.

Here, the evidence was adequate to support the jury's verdict that no action or inaction of Mansour caused the accident that resulted in Reis's death. As the first judge detailed in his decision, the evidence, viewed favorably to Mansour, established that the Mansour employees working in the trench at the time of the accident did not know there were loads of sheetrock being delivered over their heads. The foreman testified that he saw the boom delivering one overhead load, but this was after the rest of the crew, including Reis, had already left for the morning coffee break; when they returned, the foreman looked for the boom but did not see it, so he assumed (mistakenly) that the hazard had been removed. And two other employees testified that they never saw any loads being delivered over the trench at any time that day. The testimony of these witnesses alone permitted the jury to find that Mansour did not cause Reis's death because its crew was simply not aware that they were working under suspended loads. To the extent Liberty argues that these witnesses were not credible, it is not our role to make credibility determinations, nor can we "substitute [our] judgment of the facts for that of the jury."

4

O'Shaughnessy v. Besse, 7 Mass. App. Ct. 727, 728 (1979).  See Gyulakian, 475 Mass. at 295 n.11.

Liberty further argues that the first judge erred by excluding Mansour's post-accident letters to OSHA.  This argument is made in summary fashion with no citations to the record or to controlling authority and is thus waived.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).  Likewise waived is Liberty's argument that the first judge erred by denying its motion to strike Mansour's jury demand.  The first judge concluded that the jury-waiver provision in the subcontract applies only to disputes about amounts owed or time of performance and that Liberty was estopped from arguing otherwise, having claimed its own right to a jury years before.  Liberty does not mention these rulings, let alone explain why they are erroneous.  We therefore need not address the argument further.  See id.

For these reasons we conclude that Liberty has failed to show that it is entitled to relief from the jury's verdict in favor of Mansour.[4]

2.  Claims against Travelers.  Liberty next challenges the second judge's conclusion that it failed to prove that Travelers

_____

[4] Mansour's request for appellate attorney's fees and double costs is denied.

committed unfair settlement practices in violation of G. L. c. 93A and c. 176D.  These statutes "operate in tandem 'to encourage the settlement of insurance claims . . . and discourage insurers from forcing claimants into unnecessary litigation to obtain relief.'"  Terry v. Hospitality Mut. Ins. Co., 101 Mass. App. Ct. 597, 604 (2022), quoting Caira v. Zurich Am. Ins. Co., 91 Mass. App. Ct. 374, 381 (2017).  Under G. L. c. 176D, § 3 (9) (f), an insurer must "effectuate [a] prompt, fair and equitable settlement[]" when liability of its insured is "reasonably clear."  Liability in this context "encompasses both fault and damages."  Clegg v. Butler, 424 Mass. 413, 421 (1997).

In reviewing the second judge's decision, we accept her findings of fact, which are not clearly erroneous, and consider her legal conclusions de novo.  See Silva v. Norfolk & Dedham Mut. Fire Ins. Co., 91 Mass. App. Ct. 413, 415-416 (2017).  Applying this standard, we conclude that the second judge correctly rejected Liberty's claims for at least two reasons.

First, we agree with the second judge that the liability of Mansour to defend and indemnify Suffolk never became reasonably clear so as to trigger a duty to settle on the part of Travelers.  As an initial matter, until the parties in the Reis lawsuit agreed to settle in 2017, the relative liability among

6

the named defendants (which did not include Mansour) was not reasonably clear.[5]  Indeed, a few months before the settlement, Liberty told Reis's estate that Suffolk's liability was not reasonably clear, and, in answering Travelers' interrogatories related to the c. 93A claims, Liberty took the position that Suffolk's liability "never became reasonably clear."  And if Suffolk's liability to Reis was not reasonably clear, it necessarily follows that Mansour's contractual duty to defend and indemnify Suffolk was also not reasonably clear.  See Bobick v. United States Fid. & Guar. Co., 439 Mass. 652, 660 (2003) (liability not reasonably clear if "there exist[s] a legitimate difference of opinion as to the extent of [the insured's] liability"); Demeo v. State Farm Mut. Auto. Ins. Co., 38 Mass. App. Ct. 955, 957 (1995) (liability not reasonably clear where there was genuine dispute whether accident caused by insured or another party).

Moreover, even if Suffolk's own liability to Reis was reasonably clear, Mansour still would have had no contractual

_____

[5] There were four defendants named in the Reis lawsuit: East Coast Building Materials (East Coast), the company that delivered the sheetrock; the East Coast employee who operated the truck; Liberty Construction Services, LLC, the subcontractor that received the delivery; and Suffolk.  Under the final settlement agreement, Suffolk and Liberty Construction Services, LLC (both insured by Liberty) agreed to pay $7.5 million and the East Coast defendants (both insured by Travelers) agreed to pay $4.5 million.

7

duty to Suffolk unless, as discussed above, Mansour caused the accident that led to Reis's death. The second judge properly found that the record is void of any evidence of causation that would have led a reasonable insurer in Travelers' position to conclude that Mansour's liability was clear. Travelers' decision not to concede liability thus reflected "a legitimate difference of opinion" and not bad faith. Bobick, 439 Mass. at 660. This is confirmed by the jury's verdict in the coverage trial finding that Mansour was not the cause of the accident. Contrary to Liberty's contention, the jury's verdict, though rendered in 2022, is relevant to whether Travelers acted in good faith by not settling earlier because it "confirmed that [Travelers] had a reasonable basis to resist settlement." Silva, 91 Mass. App. Ct. at 418. See Bobick, supra (damages attributable to insured was "subject of good faith disagreement" in 1994, as evidenced by jury's verdict in 1996 dividing liability among insured and other parties); Transamerica Ins. Co. v. KMS Patriots, L.P., 52 Mass. App. Ct. 189, 197 (2001) ("When coverage has been correctly denied . . . , no violation of the Massachusetts statutes proscribing unfair or deceptive trade practices may be found").

We are also unpersuaded by Liberty's contention that Travelers' claims notes, which reflect that Travelers

8

anticipated having to indemnify Suffolk, should be treated as binding admissions of liability. As the second judge observed, the notes were merely indicative of Travelers' views of its potential exposure and were not admissions of liability. More fundamentally, as the second judge further observed, the standard for determining whether liability was clear is an objective one. See Demeo, 38 Mass. App. Ct. at 957. Where the evidence that Mansour caused the accident was contradictory at best, Travelers' refusal to concede liability was objectively reasonable.

Second, even assuming Mansour's liability was clear, the second judge did not err in finding that Travelers made a reasonable settlement offer. "A determination of reasonableness normally is a question of fact." Kohl v. Silver Lake Motors, Inc., 369 Mass. 795, 799 (1976). See Parker v. D'Avolio, 40 Mass. App. Ct. 394, 395 (1996). That question "is to be considered in the light of the situation as a whole," bearing in mind that "[t]he statute [G. L. c. 176D, § 3 (9)] does not call for [a] defendant's final offer, but only one within the scope of reasonableness." Bobick, 439 Mass. at 661-662, quoting Forcucci v. United States Fid. & Guar. Co., 11 F.3d 1, 2 (1st Cir. 1993). Even where an insurer undervalues a claim, it has not engaged in unfair settlement practices absent "evidence that

[it] acted in a deliberate attempt to derail the settlement process, or to litigate a claim in which causation and damages were clear."  Parker, supra at 401.

There is no such evidence here.  In December 2017, during the mediation in the Reis lawsuit, Travelers made Liberty an offer of $1 million, but the mediator reported back that "Liberty is going to settle this by themselves, and then they'll deal with Travelers later."[6]  Liberty did not make a counteroffer, and Travelers was not given the opportunity to increase its offer or otherwise participate in the settlement. Then, after the Reis lawsuit settled, Travelers made an increased offer of $1,250,000 in August and November 2018 and increased its offer again to $1,375,000 in May 2020.[7]  Liberty

_____

[6] Liberty argues that the second judge erred in considering the $1 million offer because "an alleged offer to a mediator is not the same as an offer to Liberty" and because the testimony should have been excluded under the mediation privilege.  These arguments are waived, as Liberty did not raise them below.  In fact, Liberty's litigation counsel told the second judge that he "[did not] dispute there was a million-dollar offer at the mediation," and its in-house counsel testified that Travelers made the offer but Liberty rejected it.

[7] Liberty argues that the second judge erred in considering the 2018 and 2020 offers because under Kapp v. Arbella Mut. Ins. Co., 426 Mass. 683 (1998), it was an unfair settlement practice for Travelers to condition those offers on Liberty's releasing its c. 93A claims.  We disagree.  Putting aside that Kapp is distinguishable -- because the insurer there knew that its insured was liable and that the plaintiff's damages exceeded the policy limit, see id. at 684, 687 -- the part of Kapp relied on by Liberty is no longer good law because it follows Thaler v.

10

rejected all of these offers and chose to litigate its claims against Mansour, resulting in the jury's verdict that Mansour was not liable.

In these circumstances the second judge did not err in finding that "the increasing settlement offers that Travelers made were reasonable in light of the facts of this case."  As discussed above, this is not a case where "causation and damages were clear," and Liberty offered no evidence that would support a finding that Travelers "acted in a deliberate attempt to derail the settlement process."  Parker, 40 Mass. App. Ct. at 401.  Liberty's summary assertions that Travelers' offers were made in bad faith because they were less than the amount of its settlement authority do not rise to the level of adequate appellate argument and are in any event unavailing.  Travelers was not obligated to offer the full amount of its authority to avoid being held liable for unfair settlement practices.  See Bobick, 439 Mass. at 662.[8]  Furthermore, although it is hard to

_____

American Ins. Co., 34 Mass. App. Ct. 639 (1993), which has since been overruled.  See Lazaris v. Metropolitan Prop. & Cas. Ins. Co., 428 Mass. 502, 504-506 (1998).

[8] In suggesting otherwise, Liberty mischaracterizes Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556 (2001), as holding that a "$400,000 offer for [a] $700,000 claim is bad faith."  In fact, $400,000 was the settlement amount in Hopkins; the unfair settlement practice was Liberty's failure to make the offer within a reasonable time after receiving the plaintiff's demand of $700,000.  See id. at 560.

11

see how Travelers undervalued the claim in light of the jury's verdict for Mansour, even assuming that it did, "bad faith is 'not simply bad judgment.'"  Parker, supra at 402, quoting Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 416 (1937).  Rather, bad faith "implies conscious doing of wrong," evidence of which is utterly lacking in this case.  Parker, supra, quoting Spiegel, supra.

Because we uphold the second judge's decision on these grounds, we need not reach the alternative grounds for affirmance raised by Travelers.  To the extent we have not specifically addressed any of Liberty's arguments, we see nothing in them that warrants disturbing the judgment.

Judgment affirmed.

By the Court (Desmond, Shin & Walsh, JJ.[9]),

Clerk

Entered: January 21, 2026.

---

[9] The panelists are listed in order of seniority.

12